Matthew T. Christensen, ISB: 7213
Chad R. Moody, ISB: 9946
ANGSTMAN JOHNSON
199 N. Capitol Blvd., Ste 200
Boise, ID 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@angstman.com
        chad@angstman.com

Attorneys for Debtor in Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 20-00310-JMM |
| GRAND SLAM, LLC, | Chapter 11 |
| Debtor. | |

### SECOND MOTION FOR APPROVAL OF SALE OF REAL PROPERTY

Pursuant to 11 U.S.C. § 363(b) and (f), Bankruptcy Rules 6004 and 9017, and LBR 2002.1, the Debtor in Possession, Grand Slam, LLC ("Grand Slam"), moves this Court for approval to sell real property more fully described below ("Motion").[1]  The information required by LBR 2002.1 is set forth in this Motion as follows:

1.    **Description of Real Property.**  The real property is 22.72 acres of bare land located in Canyon County commonly identified as Canyon Village with three addresses: 6804 Cleveland Boulevard, Caldwell, Idaho 83605, 5501 Kiowa Court (Parcel B), Caldwell, Idaho

---

[1] A previous Motion to Sell Real Property regarding this same subject property was granted by the Court.  However, the sale contemplated by that Motion was never closed due to the Buyer backing out of the sale.

83605, and NNA Cleveland Boulevard (Parcel C), Caldwell, Idaho 83605; and is legally described in **Exhibit A** attached to the Purchase Agreement attached hereto (the "Property").

2. <u>**Date, Time, and Place of Sale.**</u>  The sale shall be a public auction commencing on October 5, 2020, at 8:30 a.m. Mountain Time, at the offices of Angstman Johnson located at 199 N. Capitol Blvd. Suite 200 Boise, Idaho 83702.

3. <u>**Material Terms of Sale.**</u>  The Property shall be sold to the highest bidder for not less than a gross purchase price of $4,500,000.00.  Grand Slam has received and accepted from Colorado River 500, a California limited liability company (the "Buyer"), subject to higher bids and Court approval, an offer of $4,500,000.00 for the purchase of the Property ("Purchas Agreement").  A signed copy of the Purchase Agreement, including exhibits and addendums (if any), is attached hereto as <u>**Exhibit 1**</u>.  The Purchase Agreement is the product of an arm's length and good faith negotiation Grand Slam and Buyer.  Based on the negotiated purchase price, Grand Slam believes the fair market value of the Property is approximately equal to the sale price.[2]  Grand Slam believes that this initial purchase price will be sufficient to not only satisfy the secured lenders liens but also other outstanding unsecured creditor claims.  Grand Slam does not have any connection between the Buyer or its principal, Joseph A. Swain, other than through negotiations of this sale.  Closing will be held at the convenience of the parties or as soon after Court approval as possible.  The Purchase Agreement contemplates a Closing Date within 14 days following entry of a Bankruptcy Court order approving the contemplated sale, with a possible extension of up to 14 days as may be needed to finalize and secure the necessary closing documents for the sale.

---

[2] Grand Slam has an appraisal of the real property, which values the property at approximately $8 million dollars.  The Debtor has received a number of inquiries from interested parties but to date the Debtor has not received any offers near the appraised value.

4.    **Bidding Procedures.**    The opening bid price shall be the Buyer's bid of $4,500,000.00.  Any competing overbids shall start at $4,525,000.00.  Minimum bid increments shall be $10,000.00.  Bidders may bid in increments of more than $10,000.00 if desired.   To participate in the auction, an overbidder must submit to the Debtor in Possession, at least prior to the start of the auction, certified funds in the amount of $28,500.00, payable to "Grand Slam, LLC."  Should the overbidder be the winning bidder, these funds will be retained by the Debtor in Possession as a nonrefundable deposit for application against the purchase price at the closing or returned to the overbidder if the Bankruptcy Court does not approve the sale.  The certified funds of unsuccessful bidders will be refunded to those parties after the auction.

5.    **Sale Free and Clear.**  The Property is to be sold free and clear of all liens and encumbrances with all liens (if any) to attach to the sale proceeds.  Grand Slam has consulted with several real estate brokers and professionals related to the sale of the Property prior to entering into the Purchase Agreement.  Grand Slam also consulted with several parties who were interested in the property and was able to secure a buyer for the Property without the assistance of a Realtor and will not incur Realtor-related closing costs.  Existing liens on the Property will either be paid at closing in agreed-upon amounts or will be released by the lienholders prior to closing.  There are two billboard leases on the property, which are being transferred and/or assigned to the Buyer at closing.  Grand Slam is the lessor on the leases, and there are no defaults under the terms of the lease agreements.  Copies of the two leases being assigned are attached to the Purchase Agreement. In the event of existing liens on the Property that are not paid by the sale proceeds, the liens are not being paid pursuant to 11 U.S.C. §363(f)(4), as any such interests in the Property are subject to a bona fide dispute and will only be paid if later proved valid.

6.    **Proceeds from Sale**.  Grand Slam requests the Court to allow payment at closing of the liens and administrative expenses associated with this sale, to include closing costs and escrow fees.   Grand Slam proposes that the purchase price be distributed in the following approximate amounts at the time of closing:

| | |
|---|---|
| **SALE PRICE** | **$4,500,000.00** |
| | |
| *Less: Estimate Deductions* | |
| ▪ Estimated payment to Idaho Mutual Trust, LLC | $3,880,000.00 |
| ▪ Estimated payment to City of Caldwell | $1,190.00 |
| ▪ Estimated payment to Canyon County Treasurer (2018, 2019 and prorated 2020 property taxes) | $6,800.00 |
| ▪ Estimated payment to Glancey Rockwell (holds judgment lien) | $82,989.53 |
| ▪ Estimated Closing Costs (paid by Buyer) | $50,000.00 |
| | |
| Total Estimated Deductions | $4,020,979.53 |
| Estimated UST Fees (1% of Gross Sale price) | $45,000.00 |
| | |
| **Total Estimated Net Proceeds to Estate** | **$434,020.47** |

Actual deductions for unpaid liens, property taxes, closing costs, etc., may vary depending on the actual closing date.

7.    **Existing Liens**.  The Property appears to be currently encumbered by certain Deeds of Trust, tax liens and other encumbrances.  Grand Slam seeks approval of the sale pursuant to 11 U.S.C. §363(f)(2), (3) or (4).   The specific interests which appear to allegedly encumber the Property (together with the proposed treatment) are as follows:

| 22.72 Acres in Canyon County | | | |
|---|---|---|---|
| **Name of lienholder** | **Date of Recorded Lien** | **Appx. Amount allegedly secured** | **Treatment** |
| Idaho Mutual Trust, LLC- Deed of Trust | 2-26-2018 Ins. No. 2018-008112 | $4,010,000.00 | Paid at closing in agreed-upon amount. |
| City of Caldwell Planning & Zoning material lien | 2-4-2019 Ins. No. 2019-004620 | $1,190.00 | Paid at closing |
| Glancey Rockwell & Associates Judgment | 2-25-2020 Ins. No. 2020-010585 | $82,989.53 | Paid at closing in agreed-upon amount. |
| Preston Nicholes Deed of Trust | 3-24-2020 Ins No. 2020-016803 | $33,000.00 | Lien to be released prior to closing; and/or not paid at closing due to preferential nature of Deed of Trust. |
| Canyon County Treasurer- Parcel R308990000 R308990110 R308990120 | 2018, 2019, 2020 | $4,703.18 | Paid at closing. |

8.      **Fair Market Value**. As outlined above, based on Grand Slam's marketing efforts and offer received, Grand Slam believes the purchase price is approximate to the fair market value of the property, based upon current market conditions in Canyon County, Idaho.  Further, Debtor intends to continue to market the Property up to the date of the auction noted above.

9.      **Best Interest of Estate and Creditors**.  The proceeds for the sale of Property are sufficient to satisfy existing liens and leave funds left over for the remaining non-insider unsecured creditors.  Grand Slam approximates that the estimated net proceeds to be received by the estate as a result of this sale will be enough to satisfy Grand Slam's obligations to all non-insider creditors.  Grand Slam also estimates that there will be some proceeds remaining for Grand Slam's

principals and investors however, not enough to cover all insider claims.  Nevertheless, Grand Slam understands that each of these parties do not object to the terms of this Motion and proposed sale.  Accordingly, Grand Slam, in its best business judgment, believes that this proposed sale is in the best interests of the Debtor, the bankruptcy estate, and the unsecured creditors.

10.    **Objections**.  Pursuant to Bankruptcy Rule 6004(b), if you object to the sale, you must file a written objection with the U.S. Bankruptcy Court (550 W. Fort St., MSC 042, Boise, ID 83724) no later than September 28, 2020.  You must also serve a copy upon the Debtor in Possession and Debtor's Attorney.  You may also attend the scheduled hearing and present your views or support your filed response.

11.    Grand Slam believes and asserts that the Buyer is a good faith purchaser and requests a finding of the same.

12.    The Property is not subject to exemptions.

13.    Grand Slam believes and certifies that all interested parties have been properly notified pursuant to Bankruptcy Rules 2002 and 6004, and Local Rule 2002.1.

14.    Grand Slam believes the proposed sale is in the best interest of the estate and creditors.

/

/

/

/

/

/

15.    THE PROPERTY SHALL BE SOLD AS IS, WHERE IS, AND WITHOUT WARRANTY OF ANY NATURE WHATSOEVER, EITHER EXPRESSED OR IMPLIED.  The Debtor in Possession requests that approval of this sale be effective immediately and the 14-day stay imposed by Fed. R. Bankr. P 6004(h) and other rules be waived.

DATED this 9th day of September, 2020.

/s/
MATTHEW T. CHRISTENSEN
Attorneys for Debtor in Possession

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 9th day of September, 2020, I filed the foregoing SECOND MOTION FOR APPROVAL OF SALE OF REAL PROPERTY electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Brett R. Cahoon | ustp.region18.bs.ecf@usdoj.gov |
| Matthew Todd Christensen | mtc@angstman.com |
| Thomas E. Dvorak | ted@givenspursley.com |
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |

I FURTHER CERTIFY that a copy of the foregoing Motion was served on all parties listed on the attached mailing matrix and listed below on September 8th, 2020, via US Mail, postage prepaid.

Idaho Outdoor Advertising
PO Box 9256
Boise ID 83707

Read Ink
15541 Orchard Avenue
Caldwell, ID 83605

                                                  /s/
                                      Matthew T. Christensen

Label Matrix for local noticing
0976-1
Case 20-00310-JMM
District of Idaho
Boise
Wed Aug 26 13:37:32 MDT 2020

Borton Lakey Jay
141 E Carlton
MERIDIAN, ID 83642-2320

Breckon Engineering
6661 N Glenwood St
GARDEN CITY, ID 83714-1925

CANYON COUNTY TAX COLLECTOR
PO BOX 1010
CALDWELL,IDAHO 83606-1010

CITY OF CALDWELL
411 BLAINE STREET
PO BOX 1179
CALDWELL, ID 83606-1179

Brett R Cahoon
OFFICE OF THE US TRUSTEE US DEPT
720 Park Blvd., Ste. 220
Boise, ID 83712-7785

Canyon County Assessor
P.O. Box 1010
111 N 11th Ave
Caldwell, ID 83605-3416

Matthew Todd Christensen
Angstman Johnson, PLLC
199 N. Capitol Blvd., Ste. 200
Boise, ID 83702-6197

Thomas E Dvorak
POB 2720
Boise, ID 83701-2720

Glancey Rockwell
1257 W River St
BOISE, ID 83702-7028

Grand Slam, LLC
6804 E Cleveland Blvd
Caldwell, ID 83607-5360

Idaho Mutual Trust
12594 Explorer Dr.
Boise, ID 83713-1524

Idaho Mutual Trust, LLC
Givens Pursley LLP
c/o Thomas E. Dvorak
601 W. Bannock St.
P.O. Box 2720
Boise, ID 83701-2720

Idaho Mutual Trust, LLC
c/o Thomas E. Dvorak
Givens Pursley LLP
601 W. Bannock St.
Boise, ID 83702-5919

Internal Revenue Service
Centralized Insolvency Operation
PO BOX 7346
Philadelphia, PA 19101-7346

Jeffrey Holt
6297 S Ruddsdale Ave
BOISE, ID 83709-1282

Mountain States Appraisal & Consulting, Inc.
dba Valbridge Propert Advisors
1459 Tyrell Lane, Ste. B
Boise, ID 83706-4173

Pioneer Irrigation District
3804 S Lake Ave
CALDWELL, ID 83605-5546

Preston Nicholes
521 N 10th
CALDWELL, ID 83605-2925

Rich Augustus
17333 Colt Dr
CALDWELL, ID 83607-8647

Richard Augustus
17333 Colt Dr
CALDWELL, ID 83607-8647

Silver Stagg LLC
190 W Center St. Ste. 201
KANAB, UT 84741-3400

Springbok Development
6297 S Ruddsdale Ave
BOISE, ID 83709-1282

Springbox Development
6297 S Ruddsdale Ave
BOISE, ID 83709-1282

US Trustee
Washington Group Central Plaza
720 Park Blvd, Ste 220
Boise, ID 83712-7785

VALBRIDGE PROPERTY ADVISORS
1459 TYRELL LANE, SUITE B
BOISE, ID 83706-4173

End of Label Matrix
Mailable recipients    25
Bypassed recipients     0
Total                  25

# EXHIBIT 1

## REAL ESTATE PURCHASE AGREEMENT FOR IDAHO

THIS PURCHASE AGREEMENT (the "Agreement"), dated the latter of the dates, on which the parties hereto executed this Agreement (the "Effective Date"), and is made by and between:

Grand Slam LLC (the "Seller")

-AND-

Colorado River 500 LLC, Joseph A. Swain Managing Partner or Nominee (the "Buyer")

### RECITALS

A. Seller is the owner of 22.72 acres of bare real property part of which has been prepared as a planned unit development project known as "Canyon Village," and is located in Canyon County, Idaho commonly identified as Canyon Village with three addresses: 6804 Cleveland Boulevard, Caldwell, Idaho 83605, 5501 Kiowa Court (Parcel B), Caldwell, Idaho 83605, and NNA Cleveland Boulevard (Parcel C), Caldwell, Idaho 83605; and is legally described in **Exhibit A** (the "Real Property").

B. Seller is the lessor under two advertising billboard leases on the Real Property.

C. Seller filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code, District of Idaho, as case number 20-00310-JMM (the "Bankruptcy Case").

D. Buyer desires to acquire the Real Property and the assets related there to, and Seller desires to sell such assets to Buyer.

### AGREEMENT

IN CONSIDERATION OF and as a condition of the Seller selling the Property, as defined below, and the Buyer purchasing the Property and other valuable consideration, the receipt and sufficiency of which consideration is acknowledged here, the parties to this Agreement (individually the "Party" and collectively the "Parties") agree as follows:

### Sale of Assets

1. Subject to Paragraph 2, Seller agrees to sell, transfer, and assign to Buyer and Buyer agree to purchase, accept, and assume from Seller, on the terms and conditions set forth in this Agreement, the following assets (hereinafter the "Assets"):

   a. The 22.723 commercial acres that is the Real Property, as described in **Exhibit A**, including, if any, fixtures and improvements located on the Real Property and all

rights, privileges and appurtenances associated with it, including but not limited to permits, easements, and cooperative and association memberships

b. All entitlements, improvement drawings, letters, legal correspondence for development purposes, architectural drawings, civil drawings, contractor proposals, bids, surveys, environmental reports, soil reports, engineering reports, permits, financing documents, government approval documents for development and financing and any other related document important to the development of the project "Canyon Village" on the Real Property ("Project Entitlements and Documents").

c. Assumption of the following advertising billboard leases (the "Advertising Leases"):

    i. Idaho Outdoor Advertising Lease #1301, more specifically described in and attached as **Exhibit B;** and

    ii. Lamar Outdoor Advertising Company Billboard Lease, more specifically described in and attached as **Exhibit C.**

2. Buyer shall not buy cash, notes receivable, accounts receivable, other intangibles, or any other miscellaneous personal assets as identified below

a. Intentionally left blank.

3. TRANSACTION SUBJECT TO THIRD-PARTY APPROVAL AND HIGHEST BID.  The execution and delivery of this Agreement by Seller, and the consummation of the transactions contemplated herein, will require the authorization, consent, or approval of the United States Bankruptcy Court and be subject to higher bids made at a sale pursuant to 11 U.S.C. § 363.

## Purchase Price

4. The purchase price for the Assets (the "Purchase Price") is $4,500,000.00, which shall be allocated as Buyer reasonably determines.

5. Buyer shall reasonably allocate the Purchase Price between the real property, fixtures, and improvements and any personal property sold pursuant to this Agreement.  Buyer will provide the Purchase Price allocation to Seller upon a winning bid at the auction sale. The Buyer and the Seller will be bound by the allocation set forth in this section in reporting the transactions contemplated by this Agreement to any governmental authority (including without limitation the Internal Revenue Service and other taxing authorities).

6. At closing, Buyer shall pay to Seller an amount equal to the Purchase Price minus the Earnest Money Deposit, by electronic transfer or certified or cashier's check with financial contingency.  The Buyer's financing term sheet is attached as **Exhibit E.**

**Earnest Money**

7. The Buyer will deposit $28,500.00 ("Earnest Money Deposit") as earnest money at <u>Title One
Katee Dodge Senior Escrow Officer 2929 W Navigator Dr. Suite 100 Meridian ID 83642</u>,
acting as escrow agent (the "Escrow Agent"), on or before 24 Hours after execution by the
seller. Failure to deposit the earnest money as provided in this clause will result in the Buyer
being in default under this Agreement.

8. If the transaction contemplated by this Agreement is consummated, the Escrow Money
Deposit must be paid to Seller (unless already released pursuant to the terms of this
Agreement) and shall be applied against the Purchase Price. If the transaction contemplated
by this Agreement is not consummated, Seller and Buyer instruct Escrow Agent to apply the
Earnest Money as follows

    a. The Earnest Money Deposit is non-refundable and shall only be refunded if this
Agreement is terminated in event of a total material breach by Seller.

**Title Policy**

9. At the Buyer's expense, the Seller will furnish to the Buyer an owner's policy of title insurance
(the "Title Policy") from Title One (the "Title Company") in an amount of the Purchase Price
dated as of the date that the sale of the Assets becomes final and the Buyer takes possession of
the Assets (the Closing Date, as defined below), which insurance and indemnifies the Buyer
against loss as stipulated under The provisions of the Title Policy, subject to the following
exceptions (collectively the "Title Exceptions") which includes: building and zoning
ordinances; standard relating to platted subdivision; oil, gas and mineral rights; taxes, deeds of
trust and assessments which the Buyer will be assuming; discrepancies in regards to shortages
in area or boundary lines; and liens created as part of the financing for the Buyer.

**Commitment**

10. At the Seller's sole cost, the Seller will furnish or cause to be furnished to the Buyer a
commitment for title insurance (the "Commitment") and copies of restrictive covenants and
documents evidencing exceptions in the Commitment (the "Exception Documents") other than
the standard printed exceptions. The Seller hereby authorizes the Title Company to deliver the
Commitment and Exception Documents to the Buyer's address provide in this Agreement.

**Property Survey**

11. Prior to the Closing Date and at the Buyer's sole cost (if any) the seller will furnish a survey
to the Buyer and the said survey must be made by a registered professional land surveyor

acceptable to the Buyer, Title Company and any lender. The survey will be delivered to the Buyer following execution of this Agreement.

### Objections and Care

12. The Buyer may submit a written objection, within 10 days after the Buyer receives the Commitment, and Exception Documents, in relation to any defects, exceptions or encumbrances to title which makes the title unmarketable, excluding the Title Exceptions.

13. With the exception of the requirements in the Commitment which are not waived, if the Buyer fails to provide a written objection with the allowed time, it will constitute as a waiver on the part of the Buyer to object. Any timely objections by either the Buyer or any third-party lender must be cured by the Seller, at the Seller's expense, prior to closing and the Closing Date will be delayed as necessary. If the objections are not cured, this Agreement will terminate and the earnest money will be refunded to the Buyer within ten days unless the Buyer has waived the objections in writing and elected to close the sale and accept the title with the existing defect.

14. SELLER'S DISCLOSURE: The Seller does not know of any material facts that would affect the value of the Property, except those observable by the Buyer or any known to the Seller which are disclosed in this Agreement and the attached addenda (if any).

15. STATUTORY DISCLSOURES: The Seller is responsible to furnish the Buyer with the following disclosures and items as soon as practicable before signing of this Agreement: a. Seller's Real Property Disclosure Statement.

16. COUNTY DISCLOSURE: The Seller is responsible for satisfying any local disclosure requirements prior to the signing of this Agreement. Please consult the local county department in which the Property was situation and/or a local real estate attorney to ensure compliance has been met.

### Property Access and Inspection

17. The Buyer may, at its sole cost, may perform their inspections and due diligence of the Assets to be completed within 30 days of the parties execution of this Agreement.

### Property Condition

18. The Assets are being sold "as is.". Buyer acknowledges that Seller has made no agreement or promises to repair or improve any of the Assets being sold to Buyer under this Agreement. Buyer takes all such Assets in the condition existing on the date of this Agreement.

### Warranties

19. The Seller expressly disclaims all warranties, expressed or implied, including the warranty of merchantability and the warranty of fitness for a particular purpose.

## Closing

20. Closing shall occur on not later than 14 days following entry of a Bankruptcy Court order approving the sale contemplated herein (the "Closing Date"). The Parties shall have the right to extend the Closing Date by not more than fourteen (14) days as needed to finalize and secure the Closing Documents for the Sale by providing written notice to other party prior to the original Closing Date.

21. In the absence of legal excuse, which shall include the Bankruptcy Court's decision to approve this Agreement and/or the transaction contemplated by this Agreement, the failure to close the sale on the Closing Date by either Party will enable the non-defaulting party to pursue any remedies on default provided in this Agreement.

22. OBLIGATIONS OF SELLER AT CLOSING:   At Closing and coincidentally with the performance by Buyer of its obligations described in this Agreement, Seller shall deliver to Buyer the following:

   a. At closing, the Seller will execute and deliver to the Buyer a general warranty deed which has title to the Property and shows no further exceptions to title of the Property except the Title Exceptions.

   b. Bill of sale, assignments, properly endorsed certificates of title, and other instruments of transfer, in form and substance reasonably satisfactory to counsel for Buyer, necessary to transfer and convey all of the non-real property Assets to Buyer.

   c. Possession of the Assets to be conveyed pursuant to this Agreement.

   d. Any applicable notices, statements, certificates, affidavits, releases, loan documents and other documents required by this Agreement, by the Commitment or by law which is necessarily for the closing of the sale or the issuance of the Title Policy must be promptly executed and delivered by the Seller and the Buyer.

23. OBLIGATIONS OF BUYER AT CLOSING:   At Closing and coincidentally with the performance by Seller of its obligations described in this Agreement, Buyer shall deliver to Seller the following:

   a. At Closing, Buyer will pay the Purchase Price in good funds in the form of a cashier's check, a certified check, or a wire transfer acceptable to the Escrow Agent.

    b. A cashier's check, a certified check or a wire transfer for prorated items owed to Seller, if any; provided, Buyer may have up to ten (10) days following the Closing Date to reimburse Seller for any prorated items.

    c. Such other certificates and documents as may be called for by the provisions of this Agreement.

    d. written instructions, duly executed by Buyer, directing Escrow Agent to deliver the Escrow Amount (together with all accrued interest thereon, if any) to Seller.

    e. Any applicable notices, statements, certificates, affidavits, releases, loan documents and other documents required by this Agreement, by the Commitment or by law which is necessarily for the closing of the sale or the issuance of the Title Policy must be promptly executed and delivered by the Seller and the Buyer.

24. All covenants, representations and warranties in this Agreement will survive closing and may be enforced.

**Possession**

25. Possession of the Property in its current or required state will be delivered by the Seller to the Buyer upon proper funding at closing.

**Settlement and Other Expenses**

26. Unless both Parties otherwise agree in writing, the following expenses are payable by the Seller (the "Seller's Expenses") must be paid at or prior to closing:

    a. All existing liens; prepayment penalties; recording fees; lender; tax statements or certificates; preparation of deed; half of escrow fee; and all expenses payable by the Seller under this Agreement must be released or discharged accordingly.

27. The following expenses payable by the Buyer (the "Buyer's Expenses") must be paid at or prior to closing:

    a. Loan origination, discount, commitment fees if any.

    b. All expenses related or incident to any loan, including by not limited to, appraisal fees, application fees, credit reports, loan documents preparation fees, recording fees on notes and deeds of trust; as well as recording fees on the deed; financing statements; inspection fees; half of escrow fees; all prepaid items including flood and hazard insurance premiums; documentary stamp tax; title policy; surveys, and all other

expenses payable by the Buyer, necessary to perform the Buyer's obligation under this Agreement must be released or discharged accordingly.

28. Intentionally Deleted.

## Prorations

29. As may be applicable, the following items will be prorated and adjusted as of the Closing Date: any taxes due for the current year, association fees, maintenance fees, assessments, dues, heating tank fuel, utility charges and rents of the Assets.

30. If the tax rate for the current year is unknown, the Parties will use the rate from the previous year plus five percent at closing. If the tax rate for the previous year is also unknown, the Escrow Agent will estimate an amount to prorate, holdback sufficient funds and adjust the prorated amount when the new tax statements become available.
\

31. The Buyer will be obligated to pay the share of the prorated taxes for the current year if the taxes are not paid at or prior to the closing.

## Risk of Loss

32. The Seller will bear all risk of loss to the Real Property or its improvements, which includes, but is not limited to, physical damage or destruction to the Real Property, or loss caused by eminent domain, until the Closing Date. If at any point after the Effective Date of this Agreement but prior to closing, any part of the Real Property is damaged or destroyed, the Seller will restore the Real Property to its previous condition as soon as possible before the Closing Date, reasonable delays expected. If the Seller fails to restore the Real Property due to unforeseeable factors beyond the control of the Seller, the Buyer may elect one of the following:

   a. the Closing Date will be extended as necessary to accommodate the performance of restoration;

The Seller's obligations under this provision are independent of any obligations of the Seller found under the hearing Property Condition.

## Remedies on Default

33. The Buyer will be in default if the Buyer fails to comply with the provisions of this Agreement, upon which, Seller may:

   a. Treat the Escrow Money Deposit as forfeited and the said money be deemed as liquidated damages and the sole remedy for the Seller.

34. The Seller will be in default if the Seller fails to comply with the provisions of this Agreement, upon which, the Buyer may:

    a.  seek specific performance; or

    b.  seek such other relief as may be provided by law; or

    c.  a combination of any or all of the above remedies; or

    d.  treat this Agreement as terminated and receive the Escrow Money Deposit within ten business days of cancellation.

**Escrow**

35. The Seller and the Buyer agree that the Escrow Agent is not:

    a.  a party to this Agreement and will not assume and liabilities incurred as a result of the performance or nonperformance of either the Buyer or the Seller, and that no liability will be incurred unless the Escrow Agent is grossly negligent or willfully breaches the term of this Agreement;

    b.  liable for the loss of earnest money as a result of the failure of any financial institution in which the earnest money has been deposited unless the said institution is acting as an escrow agent; and

    c.  liable for interest on the earnest money.

36. Subject to the provisions of this Agreement, upon closing, the Escrow Money Deposit will be applied in the following order with the excess refunded back to the Buyer:

    a.  any cash down towards the Purchase Price; and

    b.  Buyer's Expenses.

37. At all relevant times during the course of this Agreement, the Escrow Agent is required to notify the other Party prior to the releasing of any funds to the Party who is requesting the funds.

38. The notice of the Escrow Agent to either Party will be deemed effective upon its deposit to any US Postal Service offices or mailboxes with receipt requested, provided that the notice contains adequate postage and the correct mailing address of the Party contained in this Agreement is inscribed on the notice. The notice of objection to the demand of earnest money will be deemed effective upon receipt by the Escrow Agent.

**Party Representations and Warranties**

39. SELLER REPRESENTATIONS.  Seller represents and warrants to Buyer as follows:

    a. The Seller represents and warrants that, unless otherwise waived by Buyer, there will be no liens, assessments, or security interest from third parties against the Assets, which will not be satisfied out of the sales proceeds.

    b. The Seller notes that the transactions contemplated in this Agreement are subject to the requisite approvals of the bankruptcy court in Bankruptcy Case.  Seller shall seek approval from the bankruptcy court as expeditiously as possible.

    c. The Seller makes no representation aside from those expressly provided in this Agreement.  If the representations of the Seller are untrue upon the Closing Date, the Buyer may terminate this Agreement and the earnest money will be refunded within ten days.

40. BUYER REPRESENTATIONS.  In addition to any express agreements of Buyer contained in this Agreement, Buyer represents and warrants to Seller as follows:

    a. Buyer is a limited liability company, duly organized and validly existing under the laws of the State of _California_ .  Buyer has all requisite corporate power and authority to enter into this Agreement and perform its obligations hereunder.

    b.  The execution, delivery and performance of this Agreement have been duly authorized and approved by the authorized manager and/or member of Buyer, and this Agreement shall constitute a valid and binding Agreement of Buyer in accordance with its terms.

    c. Buyer represents and acknowledges that it has entered into this Agreement on the basis of its own examination, personal knowledge and opinion of the value of the Assets. Buyer has not relied on any representations made by Seller or Seller's agents other than those specified in this Agreement. Buyer does not rely upon any verbal or written representations of Seller or any agent of Seller regarding the Assets nor the prospective profits or volume of the Assets.

    d. Buyer acknowledges that all Assets are sold "AS IS," and Seller expressly disclaims all warranties, expressed or implied, including the warranty of merchantability and the warranty of fitness for a particular purpose. Buyer further acknowledges that Seller has made no agreement or promises to repair or improve any of the equipment or personal property being sold to Buyer under this Agreement. Buyer takes all such property in the condition existing on the date of this Agreement.

e.  Buyer has as of the date of this Agreement, and shall at the Closing, funds that are sufficient to pay the Purchase Price, and otherwise consummate all of the transactions contemplated hereunder.

f.  Buyer acknowledges that Seller is a Debtor in Possession having filed a bankruptcy petition under Chapter 11 in the Bankruptcy Case. Buyer further acknowledges that the obligations of Seller to consummate the transactions contemplated by this Agreement are subject to all requisite approvals of the bankruptcy court in the Bankruptcy Case and any conditions placed thereon by the bankruptcy code and rules and the Bankruptcy Court.

g.  Buyer acknowledges and is aware that the transactions contemplated by this Agreement are subject to any higher or better bids as part of a sale process to be conducted in the Bankruptcy Case pursuant to 11 U.S.C. § 363, the bankruptcy court's direction, as well as any objections by creditors and parties in interest.

h.  Buyer agrees to use its best efforts to effectuate the transactions contemplated by this Agreement and to fulfill all the conditions of Buyer's obligations under this Agreement; and shall do all acts and things as may be required to carry out Buyer's obligations and to consummate this Agreement.

i.  All representations and warranties made in this Agreement by Buyer shall be true as of the Closing Date as fully as though such representations and warranties had been made on and as of the Closing Date, and Buyer shall not have violated or shall not have failed to perform in accordance with any covenant contained in this Agreement.

j.  None of the representations or warranties of Buyer contain or will contain any untrue statement of a material fact or omit or will omit or misstate a material fact necessary in order to make the statements contained herein not misleading.

### Notices

41. All notices pursuant to this Agreement must be written and signed by the respective Party or its agent and all such correspondences will be effective upon it being mailed with return receipt requested, or hand-delivered as follows:

To the Buyer at:

Name: Joseph A. Swain
Address: 471 Medford Ct #102 Long Beach CA 90803 (949) 524-6304
Telephone: _949- 524- 6304_
Fax: _joe@ganwestco.com_

To the Seller at:

Name: Grand Slam LLC, c/o Matthew T. Christensen
Address: 199 N. Capitol Blvd. Ste. 200 Boise, ID 83702
Telephone: (208) 384-8588
Fax: (208-629-2157)

## Assignability

42. Except as set forth below, this Agreement and the assets acquired by Buyer hereunder shall not be assigned, sold, encumbered or otherwise transferred or disposed of without Seller's prior written consent, which consent shall not be unreasonably withheld, and the approval of the bankruptcy court as may be necessary.

43. Subject to bankruptcy court approval, Seller shall not be required to consent unless it is reasonably satisfied that the prospective transferee has sufficient financial resources and experience to successfully carry on the business being acquired by Buyer under this Agreement. In the event Seller gives its consent, the transferee shall expressly assume all of Buyer's obligations under this Agreement, provided the consent and the transferee's assumption shall not in any way relieve or discharge Buyers obligations under this Agreement. Buyer shall reimburse all costs and fees reasonably incurred by Seller in reviewing, investigating and preparing documents in connection with the transfer, including attorney fees. Notwithstanding the foregoing, Buyer shall be able to freely assign its rights under this Agreement, without consent of Seller (but subject to bankruptcy court approval, if necessary), to an entity which is set up for the purpose of acquiring the business which is the subject to this Agreement and which is wholly-owned by Buyer.

44. This Agreement is binding on the representative heirs, executors, administrators, successors, personal representatives and assigns, as the case may be, of the Seller and the Buyer.

## Governing Law

45. The Parties agree this Agreement will be construed under the laws of Idaho and subject to applicable bankruptcy law, without regard to the jurisdiction in which any action or special proceeding may be instituted.

46.

## Severability

47. If there is a conflict between any provision of this Agreement and the applicable legislation of Idaho (the "Act") or the 11 U.S.C. 101 *et seq* (the "Bankruptcy Code"), the Act and the Bankruptcy Code will prevail and such provisions of the Agreement will be amended or deleted as necessary in order to comply with the Act and/or Bankruptcy Code. Further, any provisions that are required by the ACT and/or Bankruptcy Code are incorporated into this Agreement.

48. If any terms or provisions of this Agreement are determined to invalid or unenforceable by a court of competent jurisdiction, including without limitation the bankruptcy court, the remainder of this Agreement will not be affected and each unaffected term and provision of this Agreement will be valid and enforceable to the fullest extent permitted by law.

## No Broker or Agent

49. There are no obligations on either Party for the payment of broker fees in this Agreement. The Parties agree that no real estate brokers or agents were procured for their services in connection with this Agreement or any part of the sale agreement prior to the signing of this Agreement. If a broker or agent was retained, the Party which employed the said broker or agent will be solely liable for the costs associated with it.

## Agreement of Parties

50. This Agreement constitutes the entire agreement of the Parties and it may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreement. The provisions contained in this Agreement cannot be changed except by the signed and delivered written consent of both Parties.

## Representation

51. The Seller and the Buyer should consult an attorney before this Agreement is executed if any aspect of the Agreement is not understood. The Seller and the Buyer agree each will notify the other of the contact information for the respective attorney, if any, responsible for this real estate transaction.

## General Provisions

52. This Agreement may be executed in counterparts. Facsimile signatures are binding and are considered to be original signatures.

53. All monetary amounts in this Agreement refer to US dollars, and all payments required to be paid under this Agreement will be paid in US dollars unless the Parties agree otherwise in writing.

54. Headings are inserted for the convenience of the Parties only and are not to be considered when interpreting this Agreement. Words in singular mean and include the plural and vice versa. Words in masculine gender mean and include the feminine gender and vice versa. Words importing persons include firms and corporations and vice versa.

55. Time is of the essence in this Agreement. Ever calendar day except Saturday, Sunday or U.S. national holidays will be deemed a business day and all relevant time periods in this Agreement

will be calculated in business days.  Performance will be due the next business day if any deadline falls on a Saturday, Sunday or a national holiday.  A business day ends at five p.m. local time in the time zone in which the Property is situated.

EXECUTED by Joseph A. Swain, for Colorado River 500 LLC, A CALIFORNIA LLC and or
Nominee on the 31st day of August, 2020.

Witness _____

EXECUTED by Grand Slam LLC on the 3/st day of August, 2020., Seller

Witness _____          Grand Slam LLC

# EXHIBIT A

**FOX**
LAND SURVEYS

*1515 S. SHOSHONE ST.*
*BOISE, ID  83705*
*208.342.7957*
*www.foxlandsurveys.com*

PARCEL 'A'
LEGAL DESCRIPTION

*This parcel consists of a portion of the SE 1/4 of the SW 1/4 and a portion of Government Lot 7 of Section 6, Township 3 North, Range 2 West of the Boise Meridian, Canyon County, Idaho and is more particularly described as follows:*

**COMMENCING** at the southwest corner of said Section 6, also being the southwest corner of said Government Lot 7, a found brass cap monument as described on CP&F No. 9906713; thence South 89° 38' 02" East along the south boundary of said Government Lot 7 a distance of 1031.88 feet to a point on the centerline of the existing Moses Drain, a found 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612"; thence continuing along said south boundary of Government Lot 7, South 89° 38' 02" East a distance of 88.73 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612"; thence parallel with and 80 feet northeasterly of the centerline of the existing Moses Drain, North 25° 16' 11" West a distance of 315.36 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612" and the **TRUE POINT OF BEGINNING** of Parcel A;

1. Thence North 25°16'11" West along said parallel line a distance of 427.63 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

2. Thence North 64°43'49" East a distance of 160.75 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

3. Thence South 25°16'11" East, a distance of 50.67 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

4. Thence North 64°42'57" East a distance of 52.04 feet to a set 5/8 inch

*17109 Parcel A 2018*

# FOX
## LAND SURVEYS

**1515 S. SHOSHONE ST.
BOISE, ID  83705
208.342.7957**
*www.foxlandsurveys.com*

rebar with plastic cap stamped "FLSI PLS 7612";

5. Thence South 25°16'42" East a distance of 41.04 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

6. Thence North 64°43'31" East a distance of 140.21 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

7. Thence North 15°44'52" East a distance of 23.05 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

8. Thence North 44°56'28" East a distance of 34.94 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

9. Thence North 64°43'31" East a distance of 35.10 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

10. Thence South 25°16'29" East a distance of 19.18 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

11. Thence South 46°15'28" East a distance of 52.52 feet to a found 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612" herein after noted as "**Point A**";

12. Thence continuing South 46°15'28" East a distance of 297.00 feet to a found 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612" herein after noted as "**Point B**";

13. Thence continuing South 46°15'28" East a distance of 43.50 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

14. Thence South 43°44'23" West a distance of 317.37 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

15. Thence North 89°38'02" West, 311.21 feet to the **POINT OF BEGINNING**.


Containing 230,122 square feet or 5.282 acres, more or less.

*17109 Parcel A 2018*

**FOX**
**LAND SURVEYS**

*1515 S. SHOSHONE ST.*
*BOISE, ID  83705*
*208.342.7957*
*www.foxlandsurveys.com*

**Together with a 55-foot wide Ingress/Egress, Utility, Drainage and Irrigation Easement described as follows:**

**COMMENCING AT "POINT A"** described above:

1. Thence North 64° 43' 31" East a distance of 52.65 feet to a found 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612";

2. Thence along a curve to the left, having a radius of 117.50 feet, a central angle of 20°59'07", an arc length of 43.04 feet, and subtended by a chord bearing North 54°13'57" East, 42.80 feet to a found 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612";

3. Thence North 43° 44' 24" East a distance of 148.76 feet to a found 1 inch copper cap stamped "FLSI PLS 7612" on the southwesterly right-of-way of Cleveland Boulevard.


**And**


**Together with a 50-foot wide Ingress/Egress, Utility, Drainage and Irrigation Easement described as follows:**

**COMMENCING AT "POINT B"** described above:

Thence North 43° 44' 23" East a distance of 240.00 feet to a found 1 inch copper cap in asphalt stamped "FLSI PLS 7612" on the southwesterly right-of-way of Cleveland Boulevard.


**And**


**Subject to an Ingress/Egress, Utility, Drainage and Irrigation Easement**

3 | P a g e

*17109 Parcel A 2018*

**FOX**
LAND SURVEYS

*1515 S. SHOSHONE ST.*
*BOISE, ID  83705*
*208.342.7957*
*www.foxlandsurveys.com*

**described as follows:**

**COMMENCING AT "POINT A"** described above:

1. Thence South 46°15'28" East a distance of 29.45 feet;

2. Thence South 64°43'31" West a distance of 22.58 feet to a non-tangent curve to the right;

3. Thence along said non-tangent curve to the right, having a radius of 54.00 feet, a central angle of 119°23'08", an arc length of 112.52 feet, and subtended by a chord bearing South 65°01'57" West, 93.24 feet to a reverse curve to the left;

4. Thence along said reverse curve to the left, having a radius of 28.00 feet, a central angle of 60°00'00", an arc length of 29.32 feet, and subtended by a chord bearing North 85°16'29" West, 28.00 feet;

5. Thence South 64°43'31" West a distance of 213.98 feet to a set ½ inch rebar with plastic cap stamped "FLSI PLS 7612";

6. Thence North 25°16'11" West a distance of 143.71 feet to a set ½ inch rebar with plastic cap stamped 'FLSI PLS 7612' on the northerly boundary of the above described "Parcel A";

7. Thence North 64°43'49" East along said northerly boundary, a distance of 26.00 feet;

8. Thence South 25°16'11" East a distance of 117.70 feet;

9. Thence North 64°43'31" East a distance of 187.98 feet;

10. Thence along a curve to the left, having a radius of 28.00 feet, a central angle of 60°00'00", an arc length of 29.32 feet, and subtended by a chord bearing North 34°43'31" East, 28.00 feet to a reverse curve to the right;

11. Thence along said reverse curve to the right, having a radius of 54.00

*17109 Parcel A 2018*

# FOX
## LAND SURVEYS

1515 S. SHOSHONE ST.
BOISE, ID 83705
208.342.7957
www.foxlandsurveys.com

---

feet, a central angle of 19°21'56", an arc length of 18.25 feet, and subtended by a chord bearing North 14°24'29" East, 18.16 feet to a reverse curve to the left;

12. Thence along said reverse curve to the left, having a radius of 28.00 feet, a central angle of 39°09'32", an arc length of 19.14 feet, and subtended by a chord bearing North 04°30'41" East, 18.77 feet to the northerly boundary of the above described "Parcel A" to a point of non-tangency;

13. Thence North 44°56'28" East along said northerly boundary, 29.86 feet to a non-tangent curve to the left;

14. Thence along said non-tangent curve to the left, having a radius of 28.00 feet, a central angle of 49°48'11", an arc length of 24.34 feet, and subtended by a chord bearing South 69°57'37" East, 23.58 feet to a reverse curve to the right;

15. Thence along a reverse curve to the right, having a radius of 54.00 feet, a central angle of 38°58'21", an arc length of 36.73 feet, and subtended by a chord bearing South 75°22'32" East, 36.03 feet to a point of non-tangency;

16. Thence North 64°43'31" East, 1.49 feet to the northeasterly boundary of Parcel A herein described;

17. Thence South 46°15'28" East, 29.45 feet to the **POINT OF BEGINNING**.

Any modification of this description shall render it void.

END OF DESCRIPTION

Prepared by:

Timothy J. Fox, ID PLS 7612

Survey Project Manager



*17109 Parcel A 2018*



**1515 S. SHOSHONE ST.**
**BOISE, ID 83705**
**208.342.7957**
*www.foxlandsurveys.com*

PARCEL 'B'
LEGAL DESCRIPTION

*A portion of the SE 1/4 of the SW 1/4 and a portion of Government Lot 7 of Section 6, Township 3 North, Range 2 West of the Boise Meridian, Canyon County, Idaho and is more particularly described as follows:*

**COMMENCING** at the southwest corner of said Section 6, also being the southwest corner of said Government Lot 7, a found brass cap monument as described on CP&F No. 9906713; thence South 89° 38' 02" East along the south boundary of said Government Lot 7 a distance of 1031.88 feet to a point on the centerline of the existing Moses Drain, a found 1/2 inch rebar with illegible cap, found plastic cap stamped "FLSI PLS 7612"; thence continuing along said south boundary of Government Lot 7, South 89° 38' 02" East a distance of 88.73 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612"; thence parallel with and 80 feet northeasterly of the centerline of the existing Moses Drain, North 25° 16' 11" West a distance of 742.99 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612" and the **TRUE POINT OF BEGINNING** of Parcel B;

1. Thence South 64°43'49" West a distance of 80.00 feet to a point on the centerline of existing Moses Drain;

2. Thence North 25°16'11" West along said centerline a distance of 400.01 feet to a point which lies on a line 995.90 feet northerly from and parallel with the south boundary of said Section 6, witnessed by a found 5/8 inch rebar with a plastic cap stamped L.S. 3627 bearing South 89° 37' 53" East a distance of 88.74 feet;

3. Thence South 89° 37' 53" East along said parallel line (as determined by a

*17109 Parcel B 2018*

**FOX LAND SURVEYS**

1515 S. SHOSHONE ST.
BOISE, ID  83705
208.342.7957
www.foxlandsurveys.com

line joining said Southwest corner of Section 6 and the South 1/4 corner of Section 6 as described on CP&F No. 200464612 of said Section 6 a distance of 572.45 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

4. Thence South 25°16'29" East, 214.78 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

5. Thence South 64°43'31" West, 35.10 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

6. Thence South 44°56'28" West, 34.94 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

7. Thence South 15°44'52" West, 23.05 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

8. Thence South 64°43'31" West, 140.21 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

9. Thence North 25°16'42" West, 41.04 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

10. Thence South 64°42'57" West, 52.04 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

11. Thence North 25°16'11" West, 50.67 feet to a set 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

12. Thence South 64°43'49" West, 23.33 feet;

13. Thence continuing South 64°43'49" West, 137.42 feet to the **POINT OF BEGINNING**.

Containing 163,713 square feet or 3.758 acres, more or less.

17109 Parcel B 2018



**1515 S. SHOSHONE ST.**
**BOISE, ID  83705**
**208.342.7957**
*www.foxlandsurveys.com*

**Together with a 55-foot wide Ingress/Egress, Utility, Drainage and Irrigation Easement centered on the following described line:**

**COMMENCING** at the southwest corner of said Section 6, also being the southwest corner of said Government Lot 7, a found brass cap monument as described on CP&F No. 9906713; thence South 89º 38' 02" East along the south boundary of said Government Lot 7 a distance of 1031.88 feet to a point on the centerline of the existing Moses Drain, a found 1/2 inch rebar with illegible cap, found plastic cap stamped "FLSI PLS 7612"; thence continuing along said south boundary of Government Lot 7, South 89º 38' 02" East a distance of 88.73 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612"; thence parallel with and 80 feet northeasterly of the centerline of the existing Moses Drain, North 25º 16' 11" West a distance of 315.36 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612"; thence South 89° 38' 02" East a distance of 311.21 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612"; thence  North 43° 44' 23" East a distance of 317.37 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612"; thence North 46° 15' 28" West a distance of 340.50 feet to a found 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612", the **POB** of said 55-foot wide Ingress/Egress, Utility, Drainage and Irrigation Easement, being 27.50 feet left and right of the following described centerline;

1. Thence North 64° 43' 31" East a distance of 52.65 feet to a set 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612";
2. Thence along a curve to the left, having a radius of 117.50 feet, a central angle of 20°59'07", an arc length of 43.04 feet, and subtended by a chord bearing North 54°13'57" East, 42.80 feet to a found 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612";

*17109 Parcel B 2018*

**FOX**
**LAND SURVEYS**

*1515 S. SHOSHONE ST.*
*BOISE, ID  83705*
*208.342.7957*
*www.foxlandsurveys.com*

3.  Thence North 43° 44' 24" East a distance of 148.76 feet to a set 1 inch copper cap stamped "FLSI PLS 7612" on the southwesterly right-of-way of Cleveland Boulevard.

**And**

**Together with an Ingress/Egress, Utility, Drainage and Irrigation Easement described as follows:**

**COMMENCING** at the southwest corner of said Section 6, also being the southwest corner of said Government Lot 7, a found brass cap monument as described on CP&F No. 9906713; thence South 89° 38' 02" East along the south boundary of said Government Lot 7 a distance of 1031.88 feet to a point on the centerline of the existing Moses Drain, a found 1/2 inch rebar with illegible cap, found plastic cap stamped "FLSI PLS 7612"; thence continuing along said south boundary of Government Lot 7, South 89° 38' 02" East a distance of 88.73 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612"; thence parallel with and 80 feet northeasterly of the centerline of the existing Moses Drain, North 25° 16' 11" West a distance of 315.36 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612"; thence South 89° 38' 02" East a distance of 311.21 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612"; thence  North 43° 44' 23" East a distance of 317.37 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612"; thence North 46° 15' 28" West a distance of 340.50 feet to a found 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612", the **POB** of the Ingress/Egress, Utility, Drainage and Irrigation Easement;

1.  Thence South 46°15'28" East a distance of 29.45 feet;

**FOX**
**LAND SURVEYS**

*1515 S. SHOSHONE ST.*
*BOISE, ID  83705*
*208.342.7957*
*www.foxlandsurveys.com*

2. Thence South 64°43'31" West a distance of 22.58 feet to a non-tangent curve to the right;

3. Thence along said non-tangent curve to the right, having a radius of 54.00 feet, a central angle of 119°23'08", an arc length of 112.52 feet, and subtended by a chord bearing South 65°01'57" West, 93.24 feet to a reverse curve to the left;

4. Thence along said reverse curve to the left, having a radius of 28.00 feet, a central angle of 60°00'00", an arc length of 29.32 feet, and subtended by a chord bearing North 85°16'29" West, 28.00 feet;

5. Thence South 64°43'31" West a distance of 213.98 feet to a set ½ inch rebar with plastic cap stamped "FLSI PLS 7612";

6. Thence North 25°16'11" West a distance of 143.71 feet to a set ½ inch rebar with plastic cap stamped 'FLSI PLS 7612' on the northerly boundary of the above described "Parcel A";

7. Thence North 64°43'49" East along said northerly boundary, a distance of 26.00 feet;

8. Thence South 25°16'11" East a distance of 117.70 feet;

9. Thence North 64°43'31" East a distance of 187.98 feet;

10. Thence along a curve to the left, having a radius of 28.00 feet, a central angle of 60°00'00", an arc length of 29.32 feet, and subtended by a chord bearing North 34°43'31" East, 28.00 feet to a reverse curve to the right;

11. Thence along said reverse curve to the right, having a radius of 54.00 feet, a central angle of 19°21'56", an arc length of 18.25 feet, and subtended by a chord bearing North 14°24'29" East, 18.16 feet to a reverse curve to the left;

12. Thence along said reverse curve to the left, having a radius of 28.00

*17109 Parcel B 2018*

![FOX LAND SURVEYS]

1515 S. SHOSHONE ST.
BOISE, ID 83705
208.342.7957
www.foxlandsurveys.com

feet, a central angle of 39°09'32", an arc length of 19.14 feet, and subtended by a chord bearing North 04°30'41" East, 18.77 feet to the northerly boundary of the above described "Parcel A" to a point of non-tangency;

13. Thence North 44°56'28" East along said northerly boundary, 29.86 feet to a non-tangent curve to the left;

14. Thence along said non-tangent curve to the left, having a radius of 28.00 feet, a central angle of 49°48'11", an arc length of 24.34 feet, and subtended by a chord bearing South 69°57'37" East, 23.58 feet to a reverse curve to the right;

15. Thence along a reverse curve to the right, having a radius of 54.00 feet, a central angle of 38°58'21", an arc length of 36.73 feet, and subtended by a chord bearing South 75°22'32" East, 36.03 feet to a point of non-tangency;

16. Thence North 64°43'31" East, 1.49 feet to the northeasterly boundary of Parcel A herein described;

17. Thence South 46°15'28" East, 29.45 feet to the **POINT OF BEGINNING**.

Any modification of this description shall render it void.

END OF DESCRIPTION



Prepared by:

Timothy J. Fox, ID PLS 7612

Survey Project Manager

*17109 Parcel B 2018*



**FOX**
LAND SURVEYS

*1515 S. SHOSHONE ST.*
*BOISE, ID  83705*
*208.342.7957*
*www.foxlandsurveys.com*

PARCEL 'C'
LEGAL DESCRIPTION

*This parcel consists of a portion of the SE 1/4 of the SW 1/4 and a portion of*
*Government Lot 7 of Section 6, Township 3 North, Range 2 West of the*
*Boise Meridian, Canyon County, Idaho and is more particularly described as*
*follows:*

**COMMENCING** at the southwest corner of said Section 6, also being the
southwest corner of said Government Lot 7, a found brass cap monument as
described on CP&F No. 9906713; thence South 89° 38' 02" East along the
south boundary of said Government Lot 7 a distance of 1031.88 feet to a
point on the centerline of the existing Moses Drain, a found 1/2 inch rebar
with illegible cap, found plastic cap stamped "FLSI PLS 7612"; thence
continuing along said south boundary of Government Lot 7, South 89° 38'
02" East a distance of 88.73 feet to a found 5/8 inch rebar with plastic cap
stamped "FLSI PLS 7612" and the **TRUE POINT OF BEGINNING** of Parcel
C;

1. Thence parallel with and 80 feet northeasterly of the centerline of the existing
   Moses Drain, North 25° 16' 11" West a distance of 315.36 feet to a found 5/8
   inch rebar with plastic cap stamped "FLSI PLS 7612";
2. Thence South 89°38'02" East a distance of 311.21 feet to a found 5/8 inch
   rebar with plastic cap stamped "FLSI PLS 7612";
3. Thence North 43°44'23" East a distance of 317.37 feet to a found 5/8 inch
   rebar with plastic cap stamped "FLSI PLS 7612";
4. Thence North 46°15'28" West, 43.50 feet to a found 1/2 inch rebar with plastic
   cap stamped "FLSI PLS 7612" herein after noted as "**Point A**";

**FOX**
LAND SURVEYS

*1515 S. SHOSHONE ST.*
*BOISE, ID 83705*
*208.342.7957*
*www.foxlandsurveys.com*

5. Thence North 46°15'28" West, 297.00 feet to a found 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612" herein after noted as "**Point B**";

6. Thence North 46°15'28" West, 19.18 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

7. Thence North 25° 16' 29" West a distance of 233.95 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612" which lies on a line 995.90 feet northerly from and parallel with the south boundary of said Section 6;

8. Thence South 89° 37' 53" East along said parallel line (as determined by a line joining said Southwest corner of Section 6 and the South 1/4 corner of Section 6 as described on CP&F No. 200464612 of said Section 6 a distance of 227.48 feet to a found 5/8 inch rebar with plastic cap stamped "SKINNER PLS 3627" on the southwesterly right-of-way of Cleveland Boulevard;

9. Thence South 46° 15' 28" East along said right-of-way a distance of 1235.88 feet to a found Idaho Transportation Department (ITD) right-of-way brass cap stamped 45' Rt. Sta. 238+76.24;

10. Thence continuing along said right-of-way and along a curve to the right, having a radius of 41.50 feet, a central angle of 90°02'46", an arc length of 65.22 feet, and subtended by a chord bearing South 01°14'06" East, 58.71 feet to a found broken top of a (ITD) right-of-way monument with found 1 inch copper cap stamped "FLSI PLS 7612";

11. Thence continuing along said right-of-way South 43°47'16" West a distance of 46.92 feet to a found disturbed, but solid (ITD) right-of-way monument with demolished brass cap, used as a witness corner, set punch in brass cap bears N75° 42' 41" West a distance of 0.44 feet;

12. Thence along the right-of-way of East Homedale Road, along a curve to the right, having a radius of 60.00 feet, a central angle of 45°54'52", an arc length of 48.08 feet, and subtended by a chord bearing South 66°44'34" West, 46.81

*17109 Parcel C 2018*

**FOX**
LAND SURVEYS

*1515 S. SHOSHONE ST.*
*BOISE, ID 83705*
*208.342.7957*
*www.foxlandsurveys.com*

feet to a found right-of-way monument with brass cap stamped 176.65' Rt. Sta. 238+58.03 to a point of non-tangency;

13. Thence continuing along said right-of-way North 00° 01' 47" East a distance of 9.90 feet to a found 1/2 inch rebar with plastic cap stamped "JRW LS 780";

14. Thence continuing along said right-of-way South 89° 37' 14" West a distance of 9.96 feet to a found 1/2 inch rebar with plastic cap stamped "JRW LS 780";

15. Thence continuing along said right-of-way South 00° 10' 28" East a distance of 9.90 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

16. Thence continuing along said right-of-way South 89° 36' 38" West a distance of 184.38 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

17. Thence South 00°22'17" West a distance of 33.03 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612" on the southerly line of Section 6;

18. Thence along the southerly line of said Section 6, North 89º 37' 43" West a distance of 427.70 feet to a found 5/8 inch rebar with plastic cap stamped "FLSI PLS 7612";

19. Thence North 00º 22' 17" East a distance of 40.00 feet to a found 1 inch copper cap stamped "FLSI PLS 7612";

20. Thence North 11º 40' 57" East a distance of 101.98 feet to a found 5/8 inch rebar with plastic cap stamped SKINNER LS3627;

21. Thence North 89º 37' 43" West a distance of 120.00 feet to a found 5/8 inch rebar with plastic cap stamped SKINNER LS3627;

22. Thence South 00º 22' 17" West a distance of 140.00 feet to a found 5/8 inch rebar with no cap, set plastic cap stamped "FLSI PLS 7612", on the southerly line of said Section 6;

*17109 Parcel C 2018*

**FOX**
**LAND SURVEYS**

*1515 S. SHOSHONE ST.*
*BOISE, ID 83705*
*208.342.7957*
*www.foxlandsurveys.com*

23. Thence along the southerly line of said Section 6, North 89° 37' 43" West a distance of 154.70 feet to a found 5/8 inch rebar with illegible plastic cap replaced with a plastic cap stamped "FLSI PLS 7612" at the West 1/16 corner of said Section 6;

24. Thence continuing along the southerly line of said Section 6, North 89° 38' 02" West a distance of 181.42 feet to the **TRUE POINT OF BEGINNING.**

Containing 595,123 square feet or 13.662 acres, more or less.

**Subject to a 50-foot wide Ingress/Egress, Utility, Drainage and Irrigation Easement centered on the following described line:**

Commencing at **"POINT A"** described above, the **Point of Beginning**:
North 43° 44' 23" East a distance of 240.00 feet to a set 1 inch copper cap in asphalt stamped "FLSI PLS 7612" on the southwesterly right-of-way of Cleveland Boulevard.

**And also**

**Subject to a 55-foot wide Ingress/Egress, Utility, Drainage and Irrigation Easement centered on the following described line:**

**COMMENCING AT "POINT B"** described above the **Point of Beginning**:

1. Thence North 64° 43' 31" East a distance of 52.65 feet to a set 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612";

*17109 Parcel C 2018*

**FOX**
**LAND SURVEYS**

*1515 S. SHOSHONE ST.*
*BOISE, ID  83705*
*208.342.7957*
*www.foxlandsurveys.com*

2.  Thence along a curve to the left, having a radius of 117.50 feet, a central angle of 20°59'07", an arc length of 43.04 feet, and subtended by a chord bearing North 54°13'57" East, 42.80 feet to a found 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612";

3.  Thence North 43° 44' 24" East a distance of 148.76 feet to a set 1 inch copper cap stamped "FLSI PLS 7612" on the southwesterly right-of-way of Cleveland Boulevard.

Any modification of this description shall render it void.

END OF DESCRIPTION

Prepared by:

Timothy J. Fox, ID PLS 7612

Survey Project Manager

*17109 Parcel C 2018*

**FOX**
**LAND SURVEYS**

*1515 S. SHOSHONE ST.*
*BOISE, ID  83705*
*208.342.7957*
*www.foxlandsurveys.com*

2.  Thence along a curve to the left, having a radius of 117.50 feet, a central angle of 20°59'07", an arc length of 43.04 feet, and subtended by a chord bearing North 54°13'57" East, 42.80 feet to a found 1/2 inch rebar with plastic cap stamped "FLSI PLS 7612";

3.  Thence North 43° 44' 24" East a distance of 148.76 feet to a set 1 inch copper cap stamped "FLSI PLS 7612" on the southwesterly right-of-way of Cleveland Boulevard.

Any modification of this description shall render it void.

END OF DESCRIPTION



Prepared by:

Timothy J. Fox, ID PLS 7612

Survey Project Manager

*17109 Parcel C 2018*

EXHIBIT B

ORIGINAL

20080369L

# ASSIGNMENT OF IDAHO OUTDOOR ADVERTISING BILLBOARD LEASE
## FROM CANYON COUNTY TO GRAND SLAM LLC.

This assignment of the **Idaho Outdoor Advertising Lease #1301,** (Canyon County Instrument No. 9716743, hereafter the "Lease") is made and entered into as of this __16__ day of ___July___, 2008 by and between **CANYON COUNTY,** a county and political subdivision of the State of Idaho (hereafter "COUNTY"), whose address for purposes hereof is 1115 Albany Street, Caldwell, Idaho 83605 and **GRAND SLAM LLC,** whose address for purposes hereof is 212 12th Ave. Road, Nampa, Idaho 83686.

## RECITALS

**WHEREAS,** on September 19, 1996, Arthur J. Jerome entered into a Lease Agreement with Idaho Outdoor Advertising for leasing 6804 E. Cleveland Blvd., Caldwell, Idaho, described in attached **Exhibit "A"** and incorporated by reference herein (hereafter "Property"); and

**WHEREAS,** that Lease, attached hereto as **Exhibit "B"** and incorporated by reference herein, provides for a twenty (20) year lease of the Property for the location of an outdoor advertising structure on the Property; and

**WHEREAS,** on February 19, 2008, the Assignment of Idaho Outdoor Advertising Billboard Lease by the Arthur J. and Grace L. Jerome Trust to Canyon County, attached hereto as **"Exhibit "C"** and incorporated by reference herein, was signed; and

**WHEREAS, COUNTY** is a duly organized and existing county under the laws of the State of Idaho and the Idaho Constitution and desires to assign all its rights and its obligations under the Lease to **GRAND SLAM LLC.**

## ARTICLE I.
## RECITALS

The above recitals are incorporated herein as terms of this Assignment.

## ARTICLE II.
## ASSIGNMENT OF LEASE AGREEMENT

**2.1 Complete Assignment**: For value received, the undersigned **COUNTY** hereby assigns and transfers and sets over to **GRAND SLAM LLC** all rights and interest held by **COUNTY** in the Lease, attached as **Exhibit "B".**

**2.2 County's Representations**: To the best of its knowledge, **COUNTY** represents that said Lease is in full force and effect and is totally assignable to **GRAND SLAM LLC.** To the best of its knowledge, **COUNTY** further represents that the Lease

ASSIGNMENT OF BILLBOARD LEASE
CANYON COUNTY/GRAND SLAM LLC

1

remains in full force and effect on the terms contained therein without modification. To the best of its knowledge, **COUNTY** further represents that it has full right and authority to transfer said Lease and the contract rights herein transferred are free of lien, encumbrance or adverse claim.

**2.3** **GRAND SLAM LLC's Obligations**: **GRAND SLAM LLC** hereby assumes and agrees to perform all the remaining executory obligations of the Lease.

**2.4** **Successors and Assigns**: This Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**IN WITNESS WHEREOF**, the parties hereto have signed, sealed and delivered this Assignment in duplicate at Canyon County, Idaho on the date and year first above written.

**GRAND SLAM LLC**

**BOARD OF COUNTY COMMISSIONERS
CANYON COUNTY, IDAHO**

**PRESTON NICHOLES**
Managing Member

**DAVID J. FERDINAND, II**, Chairman

**MATT BEEBE**, Member

**STEVEN J. RULE**, Member

**ATTEST: WILLIAM H. HURST, Clerk**

By: _____
Deputy Clerk

Date: _7-18-08_____

ASSIGNMENT OF BILLBOARD LEASE
CANYON COUNTY/GRAND SLAM LLC

2

STATE OF IDAHO    )
                  ) ss.
County of Canyon  )

On this 18 day of July, 2008, before me, a Notary Public in and for said State, personally appeared **DAVID J. FERDINAND, II, MATT BEEBE, and STEVEN J. RULE** known or identified to me to be the duly elected commissioners of the Board of County Commissioners of the County of Canyon, a political subdivision of the State of Idaho, that executed the foregoing instrument, and acknowledged to me that said County of Canyon, State of Idaho executed the same.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed my official seal the day and year first above written.

(SEAL)

Notary Public for Idaho
Residing at: RESIDING IN: BOISE, IDAHO
My Commission Expires: COMMISSION EXPIRES: 07/25/11

STATE OF IDAHO    )
                  ) ss.
County of Canyon  )

On this 18 day of July, 2008, before me, a Notary Public in and for said State, personally appeared **PRESTON NICHOLES,** known or identified to me to be the Managing Member of the company that executed the foregoing instrument and acknowledged to me that said company executed the same.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed my official seal the day and year first above written.

(SEAL)

Notary Public for Idaho
Residing at: RESIDING IN: BOISE, IDAHO
My Commission Expires: COMMISSION EXPIRES: 07/25/11

ASSIGNMENT OF BILLBOARD LEASE
CANYON COUNTY/GRAND SLAM LLC

3

File No.: 200706422

# EXHIBIT A

**TRACT I:**

COMMENCING at a point located 995.9 feet North of the South line of Section 6, Township 3 North, Range 2 West of the Boise Meridian, Canyon County, Idaho, and 404.3 feet East of the West line of said Section 6; thence
Running south and parallel to the said West line of the said Section 6, 359.3 feet; thence East and at right angles to the West line of the said Section 6, 1,371.7 feet to the center line of the Nampa-Caldwell Boulevard; thence
In a Northwesterly direction and along the said centerline of the said Nampa-Caldwell Boulevard, 495 feet; thence
West and at right angles to the West line of said Section 6, 55 feet and continuing on the same line 956 feet to the POINT OF BEGINNING;

**TRACT II:**

COMMENCING at a point on the South line of Section 6, Township 3 North, Range 2 West of the Boise Meridian, Canyon County, Idaho, 404.3 feet East of the Southwest corner of said Section 6, running thence North and at right angles to the said South line of the said Section 6, 636.6 feet; thence
East and parallel to the said South line of the said Section 6, 1,371.7 feet to the center line of the Nampa-Caldwell Boulevard; thence
In a Southeasterly direction and following the center line of the said Nampa-Caldwell Boulevard, 931.2 feet to its intersection with the said South line of the said Section 6; thence
West along the South line of the said Section 6, 2,049.5 feet to the POINT OF BEGINNING.

**EXCEPTING THEREFROM:**
Commencing at a point on the South line of Section 6, Township 3 North, Range 2 West of the Boise Meridian, Canyon County, Idaho, located at the Southwest corner of said Section 6 and then proceed North 995.9 feet; and thence
404.3 feet East of the West line of said Section 6, Township 3 North, Range 2 West of the Boise Meridian to the REAL POINT OF BEGINNING; thence
running South and parallel to the West boundary line of the said Section 6, a distance of 995.9 feet to a point in the South boundary line of the said Section 6; thence
East a distance of 640 feet to the center of the Moses Slough Drain; thence
Proceeding in a generally Northwest direction along the center line of the Moses Slough Drain to a point 165 feet East of the POINT OF BEGINNING; thence
West a distance of 165 feet to the POINT OF BEGINNING.

File No.: 200706422

**ALSO EXCEPTING FROM TRACTS I AND II THE FOLLOWING DESCRIBED PARCEL:**

A parcel of land being on the Southwesterly (Right), side of the centerline of Interstate 84, Business Loop, (Nampa-Caldwell Boulevard), Project No. NH-F-M-7963 (021), Highway Survey, as shown on the plans thereof now on file in the office of the Idaho Transportation Department, and being situated in the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West, Boise Meridian, Canyon County, Idaho. Said parcel is a portion of that certain tract described in Instrument No. 575734 dated January 7, 1966 and recorded January 10, 1966, and is more particularly described as follows:

COMMENCING at the South Quarter corner of said Section 6; thence

North 89° 37′ 37″ West a distance of 190.48 feet on the South line of said Section 6 to as point on a line 34.56 feet Southwesterly from and perpendicular to the centerline of said project NH-F-7963 (021) at Station 240+60.38 and the REAL POINT OF BEGINNING; thence

North 46° 15′ 00″ West a distance of 1459.28 feet to a point on a line 34.31 feet Southwesterly from and perpendicular to said centerline at Station 226+01.10 of said Highway Survey; thence

North 89° 54′ 19″ West a distance of 15.49 feet to a point on a line 45.00 feet Southwesterly from and perpendicular to said centerline at Station 225+89.89 of said Highway Survey; thence

On a line 45 feet Southwesterly from and parallel with said centerline South 46° 15′ 35″ East a distance of 1459.44 feet to a point opposite Station 240+49.33 of said Highway Survey; thence

South 89° 37′ 40″ East a distance of 15.20 feet to the POINT OF BEGINNING.

**ALSO EXCEPTING FROM TRACT II THE FOLLOWING DESCRIBED PARCEL:**

A parcel of land being on the Southwesterly (Right), side of the centerline of Interstate 84, Business Loop, (Nampa-Caldwell Boulevard), Project No. NH-F-M-7963 (021), Highway Survey, as shown on the plans thereof now on file in the office of the Idaho Transportation Department, and being situated in the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West, Boise Meridian, Canyon County, Idaho. Said parcel is a portion of that certain tract described in Instrument No. 575734 dated January 7, 1966 and recorded January 10, 1966, and is more particularly described as follows:

File No.: 200706422

COMMENCING at the South Quarter corner of said Section 6; thence

North 89° 37' 37" West a distance of 190.48 feet on the South line of said Section 6 to as point on a line 34.56 feet Southwesterly from and perpendicular to the centerline of said project NH-F-7963 (021) at Station 240+60.38 and the REAL POINT OF BEGINNING; thence

Continuing North 89° 37' 37" West a distance of 423.75 feet to a point on the line 335.98 feet Southwesterly from and perpendicular to said centerline at Station 237+41.31 of said Highway Survey; thence

North 0° 22' 20" East a distance of 33.00 feet to a point on a line 311.99 feet Southwesterly from and perpendicular to said centerline at Station 237+18.62 of said Highway Survey; thence

North 89° 35' 23" East a distance of 194.30 feet to a point of curvature on a line 176.65 feet Southwesterly from and perpendicular to said centerline at Station 238+58.03 of said Highway Survey; thence

Easterly on a 60.00 foot radius curve left a distance of 48.01 feet to a point of tangency on a line 133.60 feet Southwesterly from and perpendicular to said centerline at Station 238+76.24 of said Highway Survey; thence

North 43° 44' 25" East a distance of 47.10 feet to a point of curvature on a line 86.50 feet Southwesterly from and perpendicular to said centerline at Station 238+76.24 of said Highway Survey; thence

Northerly on a 41.50 foot radius curve left a distance of 65.19 feet to a point on a line 45.00 feet Southwesterly from and perpendicular to said centerline at Station 238+34.74 of said Highway Survey; thence

South 46° 15' 35" East a distance of 214.59 feet to the POINT OF BEGINNING.

Highway Station Reference: 237+18.62 to 240+49.33.


ALSO EXCEPTING FROM TRACT II THE FOLLOWING DESCRIBED PARCEL:

A 10 x 10 foot parcel lying in the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West of the Boise Meridian, Canyon County, Idaho. Being more particularly described as follows:

File No.: 200706422

BEGINNING at the South sixteenth corner on the West side of Section 6, Township 3 North of the Boise Meridian, Canyon County, Idaho; thence

South 0° 37' 59" West 1,328.43 feet along the Section line to a point, the Southwest corner of said Section 6; thence

South 89° 41' 42" East 2,179.23 feet along a line (not the section line) to a point on the new centerline of Homedale Road; thence

North 0° 24' 37" West 25.53 feet to a point on the new right of way line that is stationed 5+75.30, said point is the Southeast corner and the REAL POINT OF BEGINNING of said 10 x 10 foot parcel; thence

Continuing North 0° 24' 37" West 10.00 feet to a point; thence

South 89° 35' 23" West 10.00 feet to a point; thence

South 0° 24' 37" East 10.00 feet to a point; thence

North 89° 39' 23" East 10.00 feet along said ROW line to a point, the REAL POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM:

A part of the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West of the Boise Meridian more particularly described as follows:

BEGINNING at the Southwest corner of the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West of the Boise Meridian; thence

North 89° 48' East 154.7 feet to the INITIAL POINT of this description; thence

North 0° 12' West 140 feet; thence

North 89° 48' East 120 feet; thence

South 11° 06' 40" West 101.98 feet; thence

South 0° 12' East 40 feet; thence

South 89° 48' West 100 feet to the INITIAL POINT of this description.

POOR COPY

Sent By: GUNSTREAM COMMERCIAL REAL ESTATE;208 442 0065;   May-1 06 11:13AM;   Page 2/3

May. 19. 2006 10:03AM                                         May-1 06 11:13AM;
                                                              No. 3512   P. 2

IDAHO OUTDOOR
ADVERTISING
P.O. BOX 9256
Boise, ID 83707

#1301

Description: 6804 E. Cleveland
Blvd. S/L 500' W/s Homedale
665'

## LEASE AGREEMENT

City _Boise_   Sizes _Idaho_   Date _September 19, 1996_

1. Lessor grants to IDAHO OUTDOOR ADVERTISING (hereinafter "Lessee") exclusive use of the premises hereinafter described, for erecting and maintaining a one or two-faced outdoor advertising structure for a period of twenty (20) years from the date of acceptance by Lessee. Lessor further grants to Lessee such free access to and use of the real property hereinafter described as Lessee requires to construct, reconstruct, relocate, cost, paint, illuminate, maintain, repair and remove the structures and advertisement placed thereon. The term "structures" as used here shall mean outdoor advertising structures, including fixtures, poster poles, their and connections. The term "premises" as used here and hereof shall mean that portion of the real property where Lessor's structures are placed. The term "real property" as used herein shall mean the following described real property

_6804 E. Cleveland Blvd._

situated in the city of _Caldwell_   County of _Canyon_   State of _Idaho_

2. The rent shall be $ _500.00_ per year payable monthly in advance. Prior to completion of the sign structure, and during such times as no current advertising copy is being displayed on the structure by Lessee, the rent shall be twelve dollars ($12.00) per year.

3. Lessee shall save the Lessor harmless from all damage to persons or property by reason of accidents resulting from the negligent acts of Lessee's agents or employees in the construction, maintenance, repair, or removal of Lessee's structures on the premises.

4. Lessor and Lessor's tenants, agents, employees, or other persons, whether or not acting on Lessor's behalf, shall not place any materials, equipment, supplies, vegetation, objects or obstructions under or adjacent to the structures or on the real property or any neighboring property which would impede or impair the view of the advertising copy on the structure. Lessor shall remove any such materials, equipment, supplies, or obstructions within ten (10) days of notice from Lessee. If Lessor fails to do so, Lessee may remove same without liability therefore and at Lessee's expense, cancel this lease and remove the structures, or reduce the rentals twelve dollars ($12.00) per year while such condition continues. Lessor also agrees that obstruction of Lessee's structures, This Lessor agrees not to erect or permit any other vegetation on the real property so Lessee deems necessary to prevent any property owned or controlled by the Lessor within a radius of two thousand (2,000) feet of Lessee's displays.

5. All rents to be paid pursuant to this Lease and all notices are to be forwarded to the undersigned Lessor at the address noted below the Lessor's signature unless notice together with documentation deemed sufficient by Lessee directing that payments and notice be sent elsewhere is received by Lessee.

6. This document constitutes the entire agreement between the parties, and neither shall be bound by any term, condition or representation, oral or in writing, not incorporated into this lease. The Lessor represents that Lessor takes the owner __X__ tenant ____ authorized agent ____ of the above described real property and has the authority to grant this leasehold estate and to execute this Lease for the term hereof.

If See _attached  Addendum._

THE TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE HEREOF ARE INCORPORATED HEREIN BY REFERENCE AND EXPRESSLY MADE A PART OF THIS LEASE.

IDAHO OUTDOOR ADVERTISING

Accepted: _____ V.P.        LESSOR: _____

Date: _9/25/96_                      Address: _____

Routed by the Lessor in
Nume of Witness:                     Telephone: ...

_____                      Social Security or Federal ID: _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_

POOR COPY

EXHIBIT _B_

POOR COPY

Sent By: GUNSTREAM COMMERCIAL REAL ESTATE;208 442 0065;      May-' 08 11:13AM;
May. 19. 2006 10:03AM                                        No. 3512    P. 3
                                                                                Page 3/3

## ADDITIONAL TERMS AND PROVISIONS

7. This Lease shall continue in full force and effect for the term named above and thereafter for one (1) twenty (20) year term unless terminated prior to the end of the initial term upon written notice by Lessor or Lessee by certified mail at least thirty (30) days but not more than ninety (90) days before the end of such initial term. In the event of any potential change in ownership of the real property, Lessor agrees to notify Lessee of such a potential change at least thirty (30) days prior to any change in ownership and to include the name and address of the prospective purchaser(s). Lessor further agrees to give and deliver to any and such prospective purchaser(s) formal, written notice of the existence of this Lease at least thirty (30) days prior to such closing and permit to Lessee an unconditional right of first refusal to purchase the real property, said right to be exercised by Lessee no later than thirty (30) days after receipt of written notice of said potential change. Lessee's failure to exercise Lessee's right of first refusal as to any offer of sale shall not affect Lessee's right to exercise such right as to any such right to any subsequent offer or sale.

8. Lessee may terminate this lease on thirty (30) days written notice prior to the initial construction of the structures. After the structures are completed, Lessee may cancel this lease upon giving thirty (30) day's written notice by certified mail to Lessor if in the sole opinion of Lessee: the view of the advertising message on the structure is partially or wholly obstructed; the real property or premises has become unsafe for the maintenance of the structures; the structures' advertising value is impaired or diminished by reduced vehicular circulation; the structure has an advertiser paying for advertising space on this structure for a period of three (3) consecutive months at Lessee's use of the structure is prevented or restricted by law. Lessee, at its option, may in lieu of cancellation continue to maintain the structure reducing the rent paid in proportion to what, in Lessee's opinion, is the loss suffered by such condition for the period the condition continues.

9. If there be more than one display on the demised premises then, for the purposes of computing rental reduction, the rent payable under said lease shall be apportioned equally among each advertising display.

10. If the whole or any part of the premises or Lessee's structures shall be taken or condemned for a public or quasi-public use or purpose under any statute, regulation or ordinance, and/or by right of eminent domain, Lessee may elect to terminate this lease upon thirty (30) days notice. In the event of such taking, whether or not this lease is terminated, the parties agree that Lessee is entitled to receive the value of Lessee's leasehold interest, or portion taken, and any consideration for the right to award the same any award that may be made for the taking of or damage to Lessee's structures and any improvements made by Lessee to the premises and in the event that this lease is continued as to the portion of premises not condemned, any award made for abandoned, modifications, or repairs which may be reasonably required in order to place the remaining portion of the premises not taken in a suitable condition for the continuance of Lessee's tenancy. In addition, in the event of such taking, Lessee may, at Lessee's election, relocate the structures on the real property.

11. Lessee shall have a right of first refusal to meet any offer for the lease of any portion of the real property for outdoor advertising purposes for a period of five (5) years after termination of this Lease. Lessee shall exercise the option within thirty (30) days after receipt of written notice of the terms of the third party lease.

12. The Lessee is and shall remain the owner of all structures placed by Lessee upon the real property and has the right to remove all above ground portion of the structures at any time.

13. This Lease is binding upon the heirs, executors, assigns, and successors of Lessor and Lessee. Where the context so requires, the singular shall include the plural.

14. Lessor appoints Lessee as Lessor's attorney in fact to act in Lessor's place for the limited purpose of applying for any local or state permits necessary or appropriate for the structures, including the construction thereof.

15. If any term of this agreement is held by a court of competent jurisdiction to be void or unenforceable, the remainder of the agreement's terms shall remain in full force and effect and shall not be affected.

---

... or  Idaho
ss.
v of  Canyon

le 21st day of  September  in the year of  1996  before me

... Don  a notary public, personally appeared  Carly Gray  and  Art Jerome

... know to me to be the person(s) whose name is subscribed to the within instrument, and acknowledged to me

... he/they executed the same.

Notary Public

My commission expires on  9/16/2002

POOR COPY

RECEIVED

MAR 2 4 2008

PROSECUTING ATTORNEY
CANYON COUNTY

# ASSIGNMENT OF IDAHO OUTDOOR ADVERTISING BILLBOARD LEASE BY THE ARTHUR J. AND GRACE L. JEROME TRUST TO CANYON COUNTY

This assignment of the **Idaho Outdoor Advertising Lease** (hereafter the "Lease") is made and entered into as of this _14th_ day of _Feb._, 2008 by and between the **ARTHUR J. AND GRACE L. JEROME TRUST** (hereafter "**TRUST**"), whose address for purposes hereof is 5816 E. Homedale Road, Caldwell, Idaho 83607 and **CANYON COUNTY**, a county and political subdivision of the State of Idaho (hereafter "**COUNTY**"), whose address for purposes hereof is 1115 Albany Street, Caldwell, Idaho 83605.

## RECITALS

**WHEREAS**, on September 19, 1996, Arthur J. Jerome entered into a Lease Agreement with Idaho Outdoor Advertising for leasing 6804 E. Cleveland Blvd., Caldwell, Idaho, described in attached **Exhibit "A"**, incorporated by reference herein (hereafter "Property"); and

**WHEREAS**, the **TRUST** sold the real Property, described in attached **Exhibit "A"**, to **COUNTY** on July 23, 2007; and

**WHEREAS**, that Lease, attached hereto as **Exhibit "B"** and incorporated by reference herein, provides for a twenty (20) year lease of the Property for the location of an outdoor advertising structure on the Property; and

**WHEREAS**, **COUNTY** is a duly organized and existing county under the laws of the State of Idaho and the Idaho Constitution; and

**WHEREAS**, the **TRUST** desires to assign all its rights and its obligations under the Lease to **COUNTY**.

## ARTICLE I.
## RECITALS

The above recitals are incorporated herein as terms of this Assignment.

## ARTICLE II.
## ASSIGNMENT OF LEASE AGREEMENT

2.1 **Complete Assignment**:  For value received, the undersigned **TRUST** hereby assigns and transfers and sets over to **COUNTY** all rights and interest held by **TRUST** in the Lease, attached as **Exhibit "B"**.

2.2 **TRUST's Representations**:  To the best of its knowledge, **TRUST** represents that said Lease is in full force and effect and is totally assignable to **COUNTY**.  To the

ASSIGNMENT OF BILLBOARD LEASE
JEROME TRUST/CANYON COUNTY
C:\DOCUME~1\MHILTY~1.MAR\LOCALS~1\Temp\Jerome Billboard Lease Assignment.doc

**EXHIBIT** _C_
#08-018

best of its knowledge, **TRUST** further represents that the Lease remains in full force and effect on the terms contained therein without modification. To the best of its knowledge, **TRUST** further represents that it has full right and authority to transfer said Lease and the contract rights herein transferred are free of lien, encumbrance or adverse claim.

2.3  **COUNTY's Obligations**:  **COUNTY** hereby assumes and agrees to perform all the remaining executory obligations of the Lease.

2.4  **Successors and Assigns**:  This Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**IN WITNESS WHEREOF**, the parties hereto have signed, sealed and delivered this Assignment in duplicate at Canyon County, Idaho on the date and year first above written.

**ARTHUR J. AND**
**GRACE L. JEROME TRUST**

**BOARD OF COUNTY COMMISSIONERS**
**CANYON COUNTY, IDAHO**

SHIRLEY JORDAN DIBBEN, Trustee

DAVID J. FERDINAND, II, Chairman

MATT BEEBE, Member

STEVEN J. RULE, Member

**ATTEST:  WILLIAM H. HURST, Clerk**

By: _____
Deputy Clerk

Date: 2-19-08

ASSIGNMENT OF BILLBOARD LEASE
JEROME TRUST/CANYON COUNTY
C:\DOCUME~1\MHILTY~1.MAR\LOCALS~1\Temp\Jerome Billboard Lease Assignment.doc

2

STATE OF IDAHO   )
                 ) ss.
County of Canyon )

On this 19th day of _____Feb._____, 2008, before me, a Notary Public in and for said
State, personally appeared ~~DAVID J. FERDINAND, II,~~ **MATT BEEBE, and STEVEN J.
RULE** known or identified to me to be the duly elected commissioners of the Board of County
Commissioners of the County of Canyon, a political subdivision of the State of Idaho, that
executed the foregoing instrument, and acknowledged to me that said County of Canyon, State of
Idaho executed the same.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed my official seal the
day and year first above written.



(S E A L)

_Claudia Amaral_
Notary Public for Idaho
Residing at: _Caldwell Id._
My Commission Expires: _3-15-08_

STATE OF IDAHO   )
                 ) ss.
County of Canyon )

On this 13th day of _Ebruary_____, 2008, before me, a Notary Public in and for said
State, personally appeared **SHIRLEY JORDAN DIBBEN,** known or identified to me to be the
Trustee of the Arthur J. and Grace L. Jordan Trust that executed the foregoing instrument and
acknowledged to me that said Arthur J. and Grace L. Jordan Trust executed the same.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed my official seal the
day and year first above written.

(S E A L)

_Marianne Debban_
Notary Public for Idaho
Residing at: _Nampa_
My Commission Expires: _07/3/2013_



ASSIGNMENT OF BILLBOARD LEASE
JEROME TRUST/CANYON COUNTY
C:\DOCUME~1\MHILTY~1.MAR\LOCALS~1\Temp\Jerome Billboard Lease Assignment.doc

3

File No.: 200706422

# EXHIBIT A

**TRACT I:**

COMMENCING at a point located 995.9 feet North of the South line of Section 6, Township 3 North, Range 2 West of the Boise Meridian, Canyon County, Idaho, and 404.3 feet East of the West line of said Section 6; thence

Running south and parallel to the said West line of the said Section 6, 359.3 feet; thence East and at right angles to the West line of the said Section 6, 1,371.7 feet to the center line of the Nampa-Caldwell Boulevard; thence

In a Northwesterly direction and along the said centerline of the said Nampa-Caldwell Boulevard, 495 feet; thence

West and at right angles to the West line of said Section 6, 55 feet and continuing on the same line 956 feet to the POINT OF BEGINNING;

**TRACT II:**

COMMENCING at a point on the South line of Section 6, Township 3 North, Range 2 West of the Boise Meridian, Canyon County, Idaho, 404.3 feet East of the Southwest corner of said Section 6, running thence North and at right angles to the said South line of the said Section 6, 636.6 feet; thence

East and parallel to the said South line of the said Section 6, 1,371.7 feet to the center line of the Nampa-Caldwell Boulevard; thence

In a Southeasterly direction and following the center line of the said Nampa-Caldwell Boulevard, 931.2 feet to its intersection with the said South line of the said Section 6; thence

West along the South line of the said Section 6, 2,049.5 feet to the POINT OF BEGINNING.

**EXCEPTING THEREFROM:**

Commencing at a point on the South line of Section 6, Township 3 North, Range 2 West of the Boise Meridian, Canyon County, Idaho, located at the Southwest corner of said Section 6 and then proceed North 995.9 feet; and thence

404.3 feet East of the West line of said Section 6, Township 3 North, Range 2 West of the Boise Meridian to the REAL POINT OF BEGINNING; thence

running South and parallel to the West boundary line of the said Section 6, a distance of 995.9 feet to a point in the South boundary line of the said Section 6; thence

East a distance of 640 feet to the center of the Moses Slough Drain; thence

Proceeding in a generally Northwest direction along the center line of the Moses Slough Drain to a point 165 feet East of the POINT OF BEGINNING; thence

West a distance of 165 feet to the POINT OF BEGINNING.

File No.: 200706422

ALSO EXCEPTING FROM TRACTS I AND II THE FOLLOWING DESCRIBED PARCEL:

A parcel of land being on the Southwesterly (Right), side of the centerline of Interstate 84, Business Loop, (Nampa-Caldwell Boulevard), Project No. NH-F-M-7963 (021), Highway Survey, as shown on the plans thereof now on file in the office of the Idaho Transportation Department, and being situated in the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West, Boise Meridian, Canyon County, Idaho. Said parcel is a portion of that certain tract described in Instrument No. 575734 dated January 7, 1966 and recorded January 10, 1966, and is more particularly described as follows:

COMMENCING at the South Quarter corner of said Section 6; thence

North 89° 37' 37" West a distance of 190.48 feet on the South line of said Section 6 to as point on a line 34.56 feet Southwesterly from and perpendicular to the centerline of said project NH-F-7963 (021) at Station 240+60.38 and the REAL POINT OF BEGINNING; thence

North 46° 15' 00" West a distance of 1459.28 feet to a point on a line 34.31 feet Southwesterly from and perpendicular to said centerline at Station 226+01.10 of said Highway Survey; thence

North 89° 54' 19" West a distance of 15.49 feet to a point on a line 45.00 feet Southwesterly from and perpendicular to said centerline at Station 225+89.89 of said Highway Survey; thence

On a line 45 feet Southwesterly from and parallel with said centerline South 46° 15' 35" East a distance of 1459.44 feet to a point opposite Station 240+49.33 of said Highway Survey; thence

South 89° 37' 40" East a distance of 15.20 feet to the POINT OF BEGINNING.

ALSO EXCEPTING FROM TRACT II THE FOLLOWING DESCRIBED PARCEL:

A parcel of land being on the Southwesterly (Right), side of the centerline of Interstate 84, Business Loop, (Nampa-Caldwell Boulevard), Project No. NH-F-M-7963 (021), Highway Survey, as shown on the plans thereof now on file in the office of the Idaho Transportation Department, and being situated in the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West, Boise Meridian, Canyon County, Idaho. Said parcel is a portion of that certain tract described in Instrument No. 575734 dated January 7, 1966 and recorded January 10, 1966, and is more particularly described as follows:

File No.: 200706422

COMMENCING at the South Quarter corner of said Section 6; thence

North 89° 37' 37" West a distance of 190.48 feet on the South line of said Section 6 to as point on a line 34.56 feet Southwesterly from and perpendicular to the centerline of said project NH-F-7963 (021) at Station 240+60.38 and the REAL POINT OF BEGINNING; thence

Continuing North 89° 37' 37" West a distance of 423.75 feet to a point on the line 335.98 feet Southwesterly from and perpendicular to said centerline at Station 237+41.31 of said Highway Survey; thence

North 0° 22' 20" East a distance of 33.00 feet to a point on a line 311.99 feet Southwesterly from and perpendicular to said centerline at Station 237+18.62 of said Highway Survey; thence

North 89° 35' 23" East a distance of 194.30 feet to a point of curvature on a line 176.65 feet Southwesterly from and perpendicular to said centerline at Station 238+58.03 of said Highway Survey; thence

Easterly on a 60.00 foot radius curve left a distance of 48.01 feet to a point of tangency on a line 133.60 feet Southwesterly from and perpendicular to said centerline at Station 238+76.24 of said Highway Survey; thence

North 43° 44' 25" East a distance of 47.10 feet to a point of curvature on a line 86.50 feet Southwesterly from and perpendicular to said centerline at Station 238+76.24 of said Highway Survey; thence

Northerly on a 41.50 foot radius curve left a distance of 65.19 feet to a point on a line 45.00 feet Southwesterly from and perpendicular to said centerline at Station 238+34.74 of said Highway Survey; thence

South 46° 15' 35" East a distance of 214.59 feet to the POINT OF BEGINNING.

Highway Station Reference: 237+18.62 to 240+49.33.

ALSO EXCEPTING FROM TRACT II THE FOLLOWING DESCRIBED PARCEL:

A 10 x 10 foot parcel lying in the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West of the Boise Meridian, Canyon County, Idaho. Being more particularly described as follows:

File No.: 200706422

BEGINNING at the South sixteenth corner on the West side of Section 6, Township 3 North of the Boise Meridian, Canyon County, Idaho; thence

South 0° 37' 59" West 1,328.43 feet along the Section line to a point, the Southwest corner of said Section 6; thence

South 89° 41' 42" East 2,179.23 feet along a line (not the section line) to a point on the new centerline of Homedale Road; thence

North 0° 24' 37" West 25.53 feet to a point on the new right of way line that is stationed 5+75.30, said point is the Southeast corner and the REAL POINT OF BEGINNING of said 10 x 10 foot parcel; thence

Continuing North 0° 24' 37" West 10.00 feet to a point; thence

South 89° 35' 23" West 10.00 feet to a point; thence

South 0° 24' 37" East 10.00 feet to a point; thence

North 89° 39' 23" East 10.00 feet along said ROW line to a point, the REAL POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM:

A part of the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West of the Boise Meridian more particularly described as follows:

BEGINNING at the Southwest corner of the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West of the Boise Meridian; thence

North 89° 48' East 154.7 feet to the INITIAL POINT of this description; thence
North 0° 12' West 140 feet; thence
North 89° 48' East 120 feet; thence
South 11° 06' 40" West 101.98 feet; thence
South 0° 12' East 40 feet; thence
South 89° 48' West 100 feet to the INITIAL POINT of this description.

**POOR COPY**

Sent By: GUNSTREAM COMMERCIAL REAL ESTATE;208 442 0065;    May-1? 06 11:13AM;    Page 2/3

May. 19. 2006 10:03AM    No. 3512    P. 2

IDAHO OUTDOOR
ADVERTISING
P.O. BOX 9256
Boise, ID 83707

Description: 6804 E. Cleveland
Blvd. S/L :500' W/s Homedale
665'

## LEASE AGREEMENT

City _Boise_    State _Idaho_    Date _September 19, 1996_

1. Lessor grants to IDAHO OUTDOOR ADVERTISING (hereinafter "Lessee") exclusive use of the premises hereinafter described, for erecting and maintaining a one or two-faced outdoor advertising structure for a period of twenty (20) years from the date of acceptance by Lessee. Lessor further grants to Lessee such free access to and use of the real property hereinafter described as Lessee requires to construct, reconstruct, relocate, post, paint, illuminate, maintain, repair and remove the structures and advertisement placed thereon. The term "structure" as used here shall mean outdoor advertising structures, including fixtures, power poles, fixed and connections. The term "premises" as used here shall mean that portion of the real property where Lessee's structures are placed. The term "real property" as used herein shall mean the following described real property:

_6804 E. Cleveland Blvd._

situated in the City of _Caldwell_    County of _Canyon_    State of _Idaho_

2. The rent shall be $_6300_ __ per year payable monthly to Lessor. Prior to completion of the sign structure, and during such times as no current advertising copy is being displayed on the structures by Lessee, the rent shall be twelve dollars ($12.00) per year.

3. Lessee shall save the Lessor harmless from all damage to persons or property by reason of accidents resulting from the negligent acts of Lessee's agents or employees in the construction, maintenance, repair, or removal of Lessee's structures on the premises.

4. Lessor and Lessee's tenants, agents, employees, or other persons, whether or not acting on Lessee's behalf, shall not place any materials, equipment, supplies, vegetation, objects or obstructions under or adjacent to the structures or on the real property or any neighboring property which would interfere with or impede Lessee's painting, posting, or servicing the structures or Lessee's quiet enjoyment of the premises or which would wholly or partially obstruct the view of the advertising copy on the structures. Lessor shall remove any such materials, equipment, supplies, or obstructions within ten (10) days of notice from Lessee. If Lessor fails to do so, Lessee may remove same without liability therefore and at Lessee's expense, cancel this lease and remove the structures, or reduce the rent to twelve dollars ($12.00) per year while such condition continues. Lessor also agrees that Lessee may, without notice or liability to Lessee, trim or remove trees and other vegetation on the real property as Lessee deems necessary to prevent obstruction of Lessee's structures. This Lessor agrees not to erect or permit any other person except Lessee to erect any advertising sign structures on any property owned or controlled by the Lessor within a radius of one thousand (1,000) feet of Lessee's displays.

5. All rents to be paid pursuant to this Lease and all notices are to be forwarded to the undersigned Lessor at the address noted below the Lessor's signature unless notice together with documentation deemed sufficient by Lessee directing that payments and notice be sent elsewhere is received by Lessee.

6. This document constitutes the entire agreement between the parties, and neither shall be bound by any term, condition or representation, oral or in writing, not incorporated into this lease. The Lessor represents that Lessor is the owner _X_, tenant ___, authorized agent ___ of the above described real property and has the authority to grant the leasehold estate and to execute this Lease for the term hereof.

See _attached Addendum_

IF TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE HEREOF ARE INCORPORATED HEREIN BY REFERENCE AND EXPRESSLY MADE A PART OF THIS LEASE.

IDAHO OUTDOOR ADVERTISING

By _Gary R. Guy_  V.P.    LESSOR _Arthur Liverpone_

Date _9/25/96_    Address: _____

Attested by the Lessor in the presence of Witness:    Telephone: _____

    Social Security or Federal ID: _506 - 14 - 0543_

**POOR COPY**

Sent By: GUNSTREAM COMMERCIAL REAL ESTATE;208 442 0065;    May-   08 11:13AM;    Page 3/3

May. 19. 2006 10:03AM                                        No. 3512   P. 3

ADDITIONAL TERMS AND PROVISIONS

7. This Lease shall continue in full force and effect for the term stated above and thereafter for one (1) twenty (20) year term unless terminated prior to the end of the initial term upon written notice by Lessor or Lessee by certified mail at least thirty (30) days but not more than ninety (90) days before the end of such initial term. In the event of any potential change in ownership of the real property, Lessor agrees to notify Lessee of such a potential change at least thirty (30) days prior to any change in ownership and to include the name and address of the prospective purchaser(s). Lessor further agrees to give and deliver to any and such prospective purchaser(s) formal, written notice of the existence of this Lease at least thirty (30) days prior to such a closing and grants to Lessee an unconditional right of first refusal to purchase the real property, said right to be exercised by Lessee no later than thirty (30) days after receipt of written notice of said potential change. Lessee's failure to exercise Lessee's right of first refusal as to any offer or sale shall not affect Lessee's right to exercise such right as to any such right to any subsequent offer or sale.

8. Lessee may terminate this lease an thirty (30) day's written notice prior to the initial construction of the structure. After the structure are completed, Lessee may cancel this lease upon giving thirty (30) day's written notice by certified mail to Lessor in the sole option of Lessee: the view of the structure, the structures' advertising value is impaired or eliminated the real property or premises has become unsafe for the maintenance of advertising space on the structure for a period of three (3) consecutive months or Lessee's use of the structure is prevented or restricted by law, Lessee, at its option, may in lieu of cancellation continue to maintain the structure reducing the rent paid in proportion to which. In Lessee's opinion, is the loss suffered by such conditions for the period the condition continues.

9. If there be more than one display on the demised premises then for the purposes of computing rental reductions, the rent payable under said lease shall be apportioned equally among each advertising display.

10. If the whole or any part of the premises or Lessee's structures shall be taken or condemned for a public or quasi-public use or purpose under any statute, regulation or ordinance, and/or by right of eminent domain, Lessee may elect to terminate this lease upon thirty (30) days notice. In the event of such taking, whether or not this lease is terminated, the parties agree that Lessee is entitled to receive: the value of Lessee's leasehold interest, or portion taken, and any consideration for the right to amend the term any extent that may be made for the taking of or damage to Lessee's structures and any improvements made by Lessee to the premises and in the event that this Lease is continued as at the portion of premises not condemned, any award made for alterations, modifications, or repairs which may be reasonably required in order to place the remaining portion of the premises not taken in a suitable condition for the continuance of Lessee's tenancy. In addition, in the event of such taking, Lessee may, at Lessee's election, relocate the structures on the real property.

11. Lessee shall have a right of first refusal to meet any offer for the lease of any portion of the real property for similar advertising purposes for a period of five (5) years after termination of this Lease. Lessee shall exercise the option within thirty (30) days after receipt of written notice of the terms of the third party lease.

12. The Lessee is and shall remain the owner of all structures placed by Lessee upon the real property and has the right to remove all above ground portion of the structures at any time.

13. This Lease is binding upon the heirs, executors, assigns, and successors of Lessor and Lessee. Where the context so requires, the singular shall include the plural.

14. Lessor appoints Lessee as Lessor's attorney in fact to act in Lessor's stead for the limited purpose of applying for any local or state permits necessary or appropriate for the structures, including the construction thereof.

15. If any term of this agreement is held by a court of competent jurisdiction to be void or unenforceable, the remainder of the agreement's terms shall remain in full force and effect and shall not be affected.

---

× Idaho                }
                        } ss.
of Canyon               }

24th day of September     in the year of 1996     before me

a notary public, personally appeared Carly Gray and Art Jerome

lly known to me to be the person(s) whose name is subscribed to the within instrument, and acknowledged to me

that they executed the same.

Notary Public          My commission expires on 9/16/2002

POOR COPY

RECORDED

'97 JUN 28 PM 12 37

...KEER
CANYON COUNTY RECORDER
BY...

9716743

RECORDED

2008 JUL 23 PM 4 36

WILLIAM H. HURST
CANYON CITY RECORDER

PIONEER TITLE COMPANY
REQUEST Canyon County
TYPE MISC    FEE 0

2 0 0 8 0 4 0 1 9 1

EXHIBIT C

PC706422

# MEMORANDUM OF BOB JEROME/CANYON COUNTY EASEMENT/ACCESS/CARETAKER AGREEMENT ("ACCESS AGREEMENT") RE: CONTINUING RIGHT OF BOB JEROME TO RECEIVE READ, INC. (LAMAR OUTDOOR ADVERTISING COMPANY) BILLBOARD LEASE PAYMENTS

**WHEREAS,** The Board of County Commissioners of Canyon County, Idaho declare that on July 11, 2006 it entered into the Bob Jerome/Canyon County Easement/Access/Caretaker Agreement ("Access Agreement"), signed by the County Commissioners on July 14, 2006 and signed by Bob Jerome on July 11, 2006.

**WHEREAS,** the Board of County Commissioners recorded a Notice of Termination of the Access Agreement with an effective termination date of July 9, 2008.

**WHEREAS,** it is the intent of the Board of County Commissioners that paragraph 5.2 of the Access Agreement which is set out below is an acknowledgment by the Board of County Commissioners that Bob Jerome has the continued right to receive yearly rent from the Read Ink billboard, located on the Bob Jerome lot, for the remainder of the lease, despite the termination of the Access Agreement on July 9, 2008:

> "5.2 BILLBOARD LEASE INCOME: As additional consideration, above the yearly rent specified in Section 4.1 of the AGREEMENT, JEROME may keep the rental income he receives from the Read Ink billboard, located in the Bob Jerome Car Lot, for the remainder of the billboard lease term notwithstanding any other provision in this AGREEMENT."

---

**MEMORANDUM RE: CONTINUING RIGHT OF BOB JEROME TO RECEIVE READ INK (LAMAR OUTDOOR ADVERTISING COMPANY) BILLBOARD LEASE PAYMENTS**

1

#07-058

**WHEREAS**, the referenced Read Ink Billboard sign is located on property legally described in attached Exhibit A, incorporated by reference herein.

**WHEREAS**, the successor in interest to Read Ink is Lamar Outdoor Advertising Company.  Exhibit B, attached hereto and by this reference made a part hereof, is a document which shows that Bob Jerome has the right to receive lease payments for twenty (20) years for a billboard on the property described in attached Exhibit A.

**NOW THEREFORE**, the Board of Commissioners in recognition thereof on the date below written authorizes the aforegoing memorandum to be issue by Canyon County.

DATED this 24th day of July, 2007

**BOARD OF COUNTY COMMISSIONERS**
**Canyon County, Idaho**

MATT BEEBE, Chairman

DAVID FERDINAND, II, Member

STEVEN J. RULE, Member

ATTEST: William H. Hurst, CLERK

By: _____
Deputy

---

**MEMORANDUM RE: CONTINUING RIGHT OF BOB JEROME TO RECEIVE READ INK (LAMAR OUTDOOR ADVERTISING COMPANY) BILLBOARD LEASE PAYMENTS**

2

File No.: 200609098

# EXHIBIT A

TRACT I:

COMMENCING at a point located 995.9 feet North of the South line of Section 6, Township 3
North, Range 2 West of the Boise Meridian, Canyon County, Idaho, and 404.3 feet East of the
West line of said Section 6; thence
Running south and parallel to the said West line of the said Section 6, 359.3 feet; thence
East and at right angles to the West line of the said Section 6, 1,371.7 feet to the center line of
the Nampa-Caldwell Boulevard; thence
In a Northwesterly direction and along the said centerline of the said Nampa-Caldwell
Boulevard, 495 feet; thence
West and at right angles to the West line of said Section 6, 55 feet and continuing on the same
line 956 feet to the POINT OF BEGINNING;
EXCEPTING:
the strip of land 21 feet wide lying adjacent and parallel to the Southwest boundary line of the
said Nampa-Caldwell Boulevard, said strip being used as a right of way for the Electric Railway;

TRACT II:

COMMENCING at a point on the South line of Section 6, Township 3 North, Range 2 West of
the Boise Meridian, Canyon County, Idaho, 404.3 feet East of the Southwest corner of said
Section 6, running thence North and at right angles to the said South line of the said Section 6,
636.6 feet; thence
East and parallel to the said South line of the said Section 6, 1,371.7 feet to the center line of
the Nampa-Caldwell Boulevard; thence
In a Southeasterly direction and following the center line of the said Nampa-Caldwell Boulevard,
931.2 feet to its intersection with the said South line of the said Section 6; thence
West along the South line of the said Section 6, 2,049.5 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM:
Commencing at a point on the South line of Section 6, Township 3 North, Range 2 West of the
Boise Meridian, Canyon County, Idaho, located at the Southwest corner of said Section 6 and
then proceed North 995.9 feet; and thence
        404.3 feet East of the West line of said Section 6, Township 3 North, Range 2 West of
the Boise Meridian to the REAL POINT OF BEGINNING; thence
running South and parallel to the West boundary line of the said Section 6, a distance of 995.9
feet to a point in the South boundary line of the said Section 6; thence
East a distance of 640 feet to the center of the Moses Slough Drain; thence
        Proceeding in a generally Northwest direction along the center line of the Moses Slough
Drain to a point 165 feet East of the POINT OF BEGINNING; thence
        West a distance of 165 feet to the POINT OF BEGINNING.

Continued on next page.

File No.: 200609098

ALSO EXCEPTING FROM TRACTS I AND II THE FOLLOWING DESCRIBED PARCEL:

A parcel of land being on the Southwesterly (Right), side of the centerline of Interstate 84, Business Loop, (Nampa-Caldwell Boulevard), Project No. NH-F-M-7963 (021), Highway Survey, as shown on the plans thereof now on file in the office of the Idaho Transportation Department, and being situated in the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West, Boise Meridian, Canyon County, Idaho. Said parcel is a portion of that certain tract described in Instrument No. 575734 dated January 7, 1966 and recorded January 10, 1966, and is more particularly described as follows:

COMMENCING at the South Quarter corner of said Section 6; thence

North 89° 37' 37" West a distance of 190.48 feet on the South line of said Section 6 to as point on a line 34.56 feet Southwesterly from and perpendicular to the centerline of said project NH-F-7963 (021) at Station 240+60.38 and the REAL POINT OF BEGINNING; thence

North 46° 15' 00" West a distance of 1459.28 feet to a point on a line 34.31 feet Southwesterly from and perpendicular to said centerline at Station 226+01.10 of said Highway Survey; thence

North 89° 54' 19" West a distance of 15.49 feet to a point on a line 45.00 feet Southwesterly from and perpendicular to said centerline at Station 225+89.89 of said Highway Survey; thence

On a line 45 feet Southwesterly from and parallel with said centerline South 46° 15' 35" East a distance of 1459.44 feet to a point opposite Station 240+49.33 of said Highway Survey; thence

South 89° 37' 40" East a distance of 15.20 feet to the POINT OF BEGINNING.

ALSO EXCEPTING FROM TRACT II THE FOLLOWING DESCRIBED PARCEL:

A parcel of land being on the Southwesterly (Right), side of the centerline of Interstate 84, Business Loop, (Nampa-Caldwell Boulevard), Project No. NH-F-M-7963 (021), Highway Survey, as shown on the plans thereof now on file in the office of the Idaho Transportation Department, and being situated in the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West, Boise Meridian, Canyon County, Idaho. Said parcel is a portion of that certain tract described in Instrument No. 575734 dated January 7, 1966 and recorded January 10, 1966, and is more particularly described as follows:

COMMENCING at the South Quarter corner of said Section 6; thence

File No.: 200609098

North 89° 37' 37" West a distance of 190.48 feet on the South line of said Section 6 to as point on a line 34.56 feet Southwesterly from and perpendicular to the centerline of said project NH-F-7963 (021) at Station 240+60.38 and the REAL POINT OF BEGINNING; thence

Continuing North 89° 37' 37" West a distance of 423.75 feet to a point on the line 335.98 feet Southwesterly from and perpendicular to said centerline at Station 237+41.31 of said Highway Survey; thence

North 0° 22' 20" East a distance of 33.00 feet to a point on a line 311.99 feet Southwesterly from and perpendicular to said centerline at Station 237+18.62 of said Highway Survey; thence

North 89° 35' 23" East a distance of 194.30 feet to a point of curvature on a line 176.65 feet Southwesterly from and perpendicular to said centerline at Station 238+58.03 of said Highway Survey; thence

Easterly on a 60.00 foot radius curve left a distance of 48.01 feet to a point of tangency on a line 133.60 feet Southwesterly from and perpendicular to said centerline at Station 238+76.24 of said Highway Survey; thence

North 43° 44' 25" East a distance of 47.10 feet to a point of curvature on a line 86.50 feet Southwesterly from and perpendicular to said centerline at Station 238+76.24 of said Highway Survey; thence

Northerly on a 41.50 foot radius curve left a distance of 65.19 feet to a point on a line 45.00 feet Southwesterly from and perpendicular to said centerline at Station 238+34.74 of said Highway Survey; thence

South 46° 15' 35" East a distance of 214.59 feet to the POINT OF BEGINNING.

Highway Station Reference: 237+18.62 to 240+49.33.


ALSO EXCEPTING FROM TRACT II THE FOLLOWING DESCRIBED PARCEL:

A 10 x 10 foot parcel lying in the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West of the Boise Meridian, Canyon County, Idaho. Being more particularly described as follows:

BEGINNING at the South sixteenth corner on the West side of Section 6, Township 3 North of the Boise Meridian, Canyon County, Idaho; thence

South 0° 37' 59" West 1,328.43 feet along the Section line to a point, the Southwest corner of said Section 6; thence

South 89° 41' 42" East 2,179.23 feet along a line (not the section line) to a point on the new centerline of Homedale Road; thence

File No.: 200609098

North 0° 24' 37" West 25.53 feet to a point on the new right of way line that is stationed 5+75.30, said point is the Southeast corner and the REAL POINT OF BEGINNING of said 10 x 10 foot parcel; thence

Continuing North 0° 24' 37" West 10.00 feet to a point; thence

South 89° 35' 23" West 10.00 feet to a point; thence

South 0° 24' 37" East 10.00 feet to a point; thence

North 89° 39' 23" East 10.00 feet along said ROW line to a point, the REAL POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM:

A part of the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West of the Boise Meridian more particularly described as follows:

BEGINNING at the Southwest corner of the Southeast Quarter of the Southwest Quarter of Section 6, Township 3 North, Range 2 West of the Boise Meridian; thence

North 89° 48' East 154.7 feet to the INITIAL POINT of this description; thence

North 0° 12' West 140 feet; thence

North 89° 48' East 120 feet; thence

South 11° 06' 40" West 101.98 feet; thence

South 0° 12' East 40 feet; thence

South 89° 48' West 100 feet to the INITIAL POINT of this description.

EXHIBIT *B*

*[handwritten top right: Aug 1, 1896 — of Tool perm Sign furnish Sign & Aug LESSEE Ty Applied for Sept Perm.]*

## Outdoor Advertising Lease Agreement

Agreement made by and between Bob Jerome, hereinafter referred to as "Lessor" and Michael L. Macgowan Jr. DBA Read Ink, of 15541 Orchard Avenue Orchard Ave., Caldwell, Idaho 83605 hereinafter referred to as "Lessee".

## Witnesseth:

Lessor hereby leases the following described real property for a term of twenty (20) years beginning upon completion of erection. Rent shall be payable, in advance, the first day of each month during the term equal to the greater of $150 monthly, or ten percent (10%) of the Gross Sales payable to Lessee for outdoor advertising on the sign structure located on the Leased Premises.

Lessor agrees to provide access for construction and maintenance of one outdoor advertising structure and to provide unobstructed visibility to the lease site as defined by outdoor advertising visibility ratings. Lessor agrees to not lease any other outdoor advertising structures within 500 feet of leased premises. Lessor and all parties with interest in the leased property agree not to place any materials, machinery, or structures which would interfere with the visibility to the sign.

Leased premises shall be the frontage property described as *6724 Caldwell Blvd. - Caldwell* _____ and shall be a parcel of sufficient size to reasonably accommodate a sign structure to be constructed by Lessee, at Lessee's expense.

## Subject to:

Lessee agrees to pay a late payment charge equal to one and one-half percent per month on unpaid rental until paid, plus reasonable attorney fees, including attorney fees through appeal, plus costs incurred by Lessor in collection of sums due hereunder.

Covenants, restrictions and easements of record, if any.

Zoning regulations and ordinances and building restrictions and regulations of governing Local, State, and Federal departments having jurisdiction of the demised premises. This agreement shall become null and void if permits from governing authorities are not secured.

Lessee shall remain the owner of all improvements or structures placed on leased premises.

Lessee shall and will indemnify and save harmless the Lessor from and against any and all liability, claims, demands, damages, expenses, fees, fines, penalties, suits, proceedings, actions and causes of action of any and every kind and nature arising or growing out of or in any way connected with the use, or construction of said advertising structure.

Lessor covenants that Lessor is the owner of the Leased Premises, has authority to execute this agreement.

This lease shall remain if force through all transfers, assignments, and purchases of said leased premises.

After the term hereof this lease shall continue in force from year to year until terminated by either party served not less than thirty (30) days before the end of any such yearly period.

| LESSEE: | LESSOR: |
|---|---|
| **Read Ink** | **Bob Jerome** |
| **15541 Orchard Avenue** | *6800 Caldwell Blvd.* |
| **Caldwell, ID 83605** | *Caldwell, ID. 83605* |
| **(208) 454-1177** | |
| By: *Beverly g. Macgowan* | By: *[signature]* |

# EXHIBIT D

(Intentionally Omitted)

EXHIBIT E



2200 Washington Ave.
St. Louis, MO 63103
314.300.4135
www.twainfinancial.com

August 6, 2020

Colorado River 500 LLC, 471
Medford Ct #102 Long Beach CA
90803
Attn: Joseph A. Swain

Re:     Twain Proposal for Ground Lease Transaction – Canyon Village Apartments (Caldwell, ID)

Twain Community Partners II LLC ("Twain"), or one or more of its affiliates (Twain or the affiliate(s) it designates, the "Landlord") proposes to acquire the site located at 6804 Cleveland Blvd. in Caldwell, ID (the "Land") and to fund the construction of a 300-unit multi-family garden apartment property on said land. Landlord will acquire fee simple ownership of the Land described above and lease said Land to Tenant on a long-term, triple-net basis generally under the terms and conditions set forth below. If the terms of this Proposal are acceptable, please return a counter-signed copy of this Proposal to my attention.

## I. Ground Lease Financing Terms

| | |
|---|---|
| **Closing Date** | Within 90 days after the date of this Proposal. |
| **Landlord** | Twain Community Partners III, LLC a to be formed Missouri limited liability company or its assigns, which may include limited purpose affiliate(s) of Twain formed for the purpose of entering into the Project documentation. |
| **Tenant** | Colorado River 500, LLC or assigns |
| **Seller** | Colorado River 500, LLCor assigns |
| **Purchase Price** | $16,301,703 |
| **Project** | The Project will be a 300-unit, multi-family garden apartment property in Caldwell, ID. |
| **Transaction Structure** | It is anticipated that Landlord will enter into a purchase agreement to acquire fee simple title to the Land and simultaneously therewith enter into a long-term lease agreement with Tenant (the foregoing agreements, together with all other documents and instruments executed in connection with the closing of the Project are collectively referred to herein as the "Definitive Agreements"). Tenant shall be responsible for any transfer taxes related to the acquisition of the Land by Landlord. Tenant will agree to cause the lender(s) in respect of the project to enter into a subordination and non-disturbance agreement(s) reasonably satisfactory to Landlord. |



2200 Washington Ave.
St. Louis, MO 63103
314.300.4135
www.twainfinancial.com

| | |
|---|---|
| **Disbursement** | The Purchase Price and Capitalized Rent (if applicable) will be disbursed according to the following schedule and as more particularly set forth in the purchase agreement, subject to approval by Twain: |
| | First installment – shall be equal to the lesser of (i) the appraised as-is value of the property and (ii) Tenant's acquisition cost basis in the property and shall be due upon initial closing. |
| | If this transaction includes Capitalized Rent, the total amount for the Project will be held back at the time of the First Installment. |
| | Second installment – 50% of the remaining balance of the Purchase Price upon 50% construction complete. |
| | Final installment – the remaining balance of the Purchase Price upon 75% construction complete. |
| **Term** | Ninety-nine (99) years beginning as further described in the Definitive Agreements. |
| **Annual Minimum Rent** | Annual Minimum Rent will initially be equal to: |
| | Years 1-99: 5.50% of the Purchase Price plus Capitalized Rent (if applicable) |
| | Annual Minimum Rent will be payable in equal quarterly installments. |
| | Supplemental Rent will initially be equal to: |
| **Supplemental Rent** | Year 1: $0<br>Year 2: 2% of the Annual Minimum Rent in Year 2<br>Year 3-99: 2% of the Annual Minimum Rent plus Supplemental Rent for the prior year |
| | On every fifth anniversary of the Closing Date through Year 99, Supplemental Rent shall be adjusted to match the Consumer Price Index ("CPI") increase during the same span, if and only if CPI has increased by more than 2% during the same period. |
| | Supplemental Rent will be payable in equal quarterly installments. |
| **Additional Rent** | Tenant shall be responsible for all maintenance, repair, and replacement of the Project.  Tenant shall be responsible for all taxes and insurance obligations relating to the Project. |



2200 Washington Ave.
St. Louis, MO 63103
314.300.4135
www.twainfinancial.com

| | |
|---|---|
| **Capitalized Rent** | The first twenty-four (24) months of Annual Minimum Rent and Supplemental Rent ("Capitalized Rent") can be capitalized at initial funding. Capitalized Rent for the Project will be held back by Landlord at the First Installment. Capitalized Rent is in addition to the Purchase Price stated above. |
| | On a quarterly basis, the Landlord will advance proceeds in the exact amount of Annual Minimum Rent and Supplemental Rent due for that period. As a result, this will increase the outstanding balance on which Annual Minimum Rent and Supplemental Rent are due, but not until such sum is advanced by Landlord. |
| **Guaranty** | A guarantor acceptable to Twain shall guaranty the Annual Minimum Rent, Supplemental Rent, Additional Rent, completion of construction, and, if selected, Option 1 under Option to Repurchase below. |
| **Operation of Land** | The Land shall be used as a multi-family garden apartment property. Tenant shall be required to continuously operate the Project for the foregoing use in a first-class manner during the Term. |
| **Option to Repurchase** | Option 1: Swap Financing – Tenant will have the option at any time to purchase the Land from Landlord for a price equal to the Purchase Price plus Capitalized Rent (if applicable) stated above plus a "make whole or in the money" fee as defined in the Guaranty related to a swap that Landlord will enter into in connection with this transaction. |
| | Option 2: Cap Rate - Tenant will have the option to purchase the Land, after a 3 year lockout, from Landlord for a price equal to the then current Annual Minimum Rent plus Supplemental Rent after a CPI adjustment on the ground lease divided by a 5% cap rate in years 4-29. In year 30 and thereafter, the purchase price for the Land shall equal the Purchase Price plus Capitalized Rent (if applicable) stated above. Tenant shall be responsible for all transfer taxes, costs and expenses associated with the exercise of an Option to Repurchase. |
| **Conditions of Closing** | • Purchase Price shall not exceed 30% of the as-stabilized appraised value of the Project, excluding Capitalized Rent.<br>• Annual Minimum Rent shall not exceed 25% of as-stabilized net operating income of the Project.<br>• Approval of final Definitive Agreements by Twain.<br>• Written consent of all leasehold mortgage lenders to the Definitive Agreements, together with subordination and non-disturbance agreements satisfactory to Twain.<br>• Satisfactory review of title, appraisal and environmental reports for the Land. |

3



2200 Washington Ave.
St. Louis, MO 63103
314.300.4135
www.twainfinancial.com

- Executed GMP contract with general contractor to implement the core or shell of the Project (separate contracts or self-performance of TI and other subcontracts is permissible).
- Closing shall occur simultaneous with the remainder of the capital stack.
- Final underwriting by Twain and approval of Twain's investment committee

## II. Fees & Expenses

With the exception of the Deposit, the following fees will be charged to Tenant on the Closing Date and may be capitalized and paid out of the proceeds of the Purchase Price.

**Finance Fee**  2% of the Purchase Price plus Capitalized Rent (if applicable), to be paid to Twain.

**Deposit**  $20,000, to be deposited within 5 days after execution of this Proposal by Tenant. In the event the Tenant is unable to close on the transaction contemplated herein due to the fault of any party other than Twain, the Deposit shall be retained by Twain. In the event Twain terminates this Proposal or is unable to close on the transaction contemplated herein due to the fault of Twain, the Deposit shall be immediately returned to Tenant. In the event the transaction contemplated herein closes, the Deposit shall be refunded to Tenant on the Closing Date or may be netted against the Purchase Price on the Closing Date.

**Attorneys' Fees**  The Tenant shall pay all reasonable attorneys' fees incurred by Twain in connection with this transaction. Tenant's obligation to pay Twain's attorneys' fees is not contingent upon closing on the ground lease financing.

**Construction Monitoring**  Twain will engage a construction monitor to review all plans and specifications for the Project prior to commencement of construction. The construction monitor will also review monthly or periodic draw requests and certify that the Project has been completed in accordance with the plans and specifications. Twain anticipates the costs of such services being $10,000.

## III. Miscellaneous Provisions

**Termination**  Twain can terminate this Proposal at any time for any reason by providing written notice to the Tenant. Tenant may terminate this Proposal at any time by providing written notice to Twain, provided Twain will retain the Deposit upon any such termination.

**Confidentiality**  During the course of the Project, each party may be given access to information that: (i) relates to the past, present, and future research, development, business activities, products, services, and technical knowledge of the other party; and (ii) has been identified as confidential by the other party (collectively, "Confidential Information"). The Confidential Information of one party may be used by the



2200 Washington Ave.
St. Louis, MO 63103
314.300.4135
www.twainfinancial.com

receiver only in connection with the Project and only so long as this Proposal is in full force and effect. Each party agrees to protect the confidentiality of the Confidential Information of the other in the same manner that it protects the confidentiality of its own proprietary and confidential information of like kind. Access to the Confidential Information shall be restricted to those of Tenant's and Twain's personnel with a need to know and engaged in a use permitted by this Proposal or a future term sheet. The Confidential Information in written form may not be copied or reproduced without the owner's prior written consent.

**Obligations of Tenant**

Tenant will diligently and timely develop the Project. Tenant will provide Twain with all materials in the possession of Tenant that are reasonably requested by Twain for the purpose of evaluating the transaction contemplated by this Proposal.

**Insurance**

During the period of construction of the Project and throughout the Term, the Tenant will cause Twain to be added as an additional named insured under its casualty insurance policy for the Land and the Project, commercial general liability insurance policy, and any commercial general liability policies required under all design and construction contracts entered into by Tenant in connection with the Project. During the period of construction of the Project and throughout the Term, the Tenant shall maintain casualty and liability insurance on the Land in an amount not less than the fair market value of the Land.

**Governing Law**

All questions arising under or in connection with this Proposal shall be governed by the laws of the state where the Land is located.

**Notices**

Any notices required to be delivered to Twain in connection with this Proposal shall be deemed sufficiently given when actually received if personally delivered, or three (3) business days after deposit in the U.S. Mail if sent by certified mail, return receipt requested, or one (1) business day after deposit with a nationally-recognized overnight, commercial courier, to the attention of the individual signing this Proposal for the party to which the notice is directed, at the address indicated below:

**Twain Community Partners II LLC**
2200 Washington Avenue
St. Louis, MO 63103
Attn: Nick Maglasang

**Assignment**

Twain shall have the right to assign its interest in this Proposal. The Tenant shall not have the right to assign its interest in this Proposal without prior written consent of Twain, which may be withheld at the sole discretion of Twain.

**Non-Binding**

Except as otherwise expressly stated herein, this Proposal does not constitute or create, and shall not be deemed to constitute or create, any legally binding or



2200 Washington Ave.
St. Louis, MO 63103
314.300.4135
www.twainfinancial.com

enforceable obligation on the part of Twain and should not be construed as a binding commitment to provide any type of financing to the Project or the Tenant.

[SIGNATURE PAGE TO FOLLOW]



2200 Washington Ave.
St. Louis, MO 63103
314.300.4135
www.twainfinancial.com

Twain and the Tenant have executed this Proposal as of the date below.

Sincerely,

**Twain Community Partners II LLC**,
a Missouri limited liability company

By: _____
    Nick J. Maglasang, Vice President

AGREED TO AND ACCEPTED BY:

**Colorado River 500, LLC**

By: _____

Name: _Joseph A. Swain_

Title: _Managing Member_

Date: _8-25-2020_